**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAIAN ONAKA, TORSHIA WOODS, SHELI
ZELLER, MARGO FERGUSON, and EVA
BAILEY, individually and on behalf of all others
similarly situated,

                Plaintiffs,

     v.

SHISEIDO AMERICAS CORPORATION,

                Defendant.

Civil Case No. 1:21-cv-10665-PAC

Judge Paul A. Crotty

Oral Argument Requested

**DEFENDANT SHISEIDO AMERICAS CORPORATION'S MEMORANDUM IN**
**SUPPORT OF MOTION TO DISMISS PURSUANT TO**
**<u>FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and (6)</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.    Overview of Complaint................................................................................................ 2

II.    The PFAS Group and Their Regulation...................................................................... 5

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    Plaintiffs Lack Article III Standing............................................................................. 9

        1.      Plaintiffs Fail to Articulate a Concrete Injury........................................... 9

        2.      Plaintiffs Fail to Identify a Particularized Injury. .................................. 13

II.    The Complaint Does Not Meet Rule 9(b)'s Heightened Pleading Standard. ...................... 14

III.    Reasonable Consumers Are Not Deceived by the Challenged Representations. ................. 17

IV.    The Ancillary Claims All Fail for Independent Reasons......................................... 22

CONCLUSION.................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011), *cert. denied*, 568 U.S. 1229 (2013).......................................9, 11

*Anschutz Corp. v. Merrill Lynch & Co.*,
   690 F.3d 98 (2d Cir. 2012)...................................................................................................24

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016)......................................................................................................4

*Arabian v. Organic Candy Factory*,
   No. 217-CV-05410-ODW-PLA, 2018 WL 1406608 (C.D. Cal. Mar. 19, 2018)...................15

*Argabright v. Rheem Mfg. Co*,
   201 F. Supp. 3d 578 (D.N.J. 2016) .......................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................7

*Azoulai v. BMW of N. Am. LLC*,
   No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................................21

*Barrett-O'Neill v. Lalo, LLC*,
   171 F. Supp. 3d 725 (S.D. Ohio 2016) .................................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................7

*Berger v. L.L. Bean, Inc.*,
   351 F. Supp. 3d 256 (E.D.N.Y. 2018) .................................................................................10

*Bly–Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ..............................................................................................15

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018) ...............................................................................................19

*Brodie v. Green Spot Foods, LLC*,
   503 F. Supp. 3d 1 (S.D.N.Y. 2020) ......................................................................................23

*Brown v. Kerry Inc.*,
   No. 2-CV-9730 (PGG) (JLC), 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021).................24, 25

*Bynum v. Fam. Dollar Stores, Inc.*,
   No. 1:20-CV-06878 (MKV), 2022 WL 837089 (S.D.N.Y. Mar. 21, 2022)......................18, 20

*Cheslow v. Ghirardelli Chocolate Co.*,
   445 F. Supp. 3d 8 (N.D. Cal. 2020) ...........................................................................................20

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) ......................................................................................................21

*Colangelo v. Champion Petfoods USA, Inc.*,
   No. 18-CV-1228, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ................................................23

*Cooper v. Bonobos, Inc.*,
   No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ...........................9, 10, 11

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2nd Cir. 2013).....................................................................................................18

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .........................................................................................17

*GMO Free USA v. Coty Inc. et al.*,
   No. 2021 CA 004786 .............................................................................................................7, 19

*Gordon v. Target Corp.*,
   No. 20-CV-9589 (KMK), 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ............................23, 24

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
   No. 19-CV-1345 TWR (AGS), 2021 WL 822721 (S.D. Cal. Jan. 22, 2021) ............................17

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015)........................................................................................14

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) .........................................................................................8

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ..................................................................................10, 11

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab.*
   *Litig.*,
   903 F.3d 278 (3d Cir. 2018).............................................................................................9, 10, 11

*International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995).............................................................................................................4

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................................................14

*Lasker v. New York State Elec. & Gas Corp.*,
    85 F.3d 55 (2d Cir. 1996)...............................................................21

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................18

*Lewis v. Casey*,
    518 U.S. 343 (1996)..................................................................9, 13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................7, 9

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020)................................................................7

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)............................................................8

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ...............................................9, 11, 12

*Mladenov v. Wegmans Food Mkts., Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015) .................................................8

*Moore v. Mars Petcare US, Inc.*.
    966 F.3d 1007 .................................................................................18

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ............................................................18

*Newcal Industries, Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008), *cert. denied*, 557 U.S. 903 (2009)...................21, 22

*Olson v. Major League Baseball*,
    29 F.4th 59 (2d Cir. 2022) ..............................................................15

*Pels v. Keurig Dr. Pepper, Inc.*,
    No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .....................13

*Roof Maxx Tech., LLC v. Holsinger*,
    No. 2:20-CV-03154, 2021 WL 3617153 (S.D. Ohio Aug. 16, 2021) ....................8

*Silva v. Smucker Nat. Foods, Inc.*,
    No. 14-CV-6154 (JG)(RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015)..................23

*Small v. Lorillard Tobacco Co., Inc.*,
    679 N.Y.S.2d 593 (1998), *aff'd*, 94 N.Y.2d 43 (1999)........................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016) .................................................9

*Staehr v. Hartford Financial Services Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008) .................................................................................7

*Stokley-Van Camp, Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009) ..................................................................21

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-CV-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015).............24

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..............................................................................................9

*Topshelf Mgmt., Inc. v. Campbell-Ewald, Co.*,
    117 F. Supp. 3d 722 (M.D.N.C. 2015) ..................................................................8

*Turk v. Rubbermaid Corp.*,
    No. 21-CV-270 (KMK), 2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ..................23

*United States ex rel. Forcier v. Computer Scis. Corp.*,
    183 F. Supp. 3d 510 (S.D.N.Y. 2016) ..................................................................15

*United States ex rel. Ladas v. Exelis, Inc.*,
    824 F.3d 16 (2d Cir. 2016) ...................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................15

*Vitt v. Apple Computer, Inc.*,
    469 F. App'x 605 (9th Cir. 2012) ...................................................................21, 22

*Wynn v. Topco Assocs., LLC*,
    No. 19-CV-11104, 2021 WL 168541 (S.D.N.Y. Jan 19, 2021) ............................24

*Yuhasz v. Brush Wellman, Inc.*,
    341 F.3d 559 (6th Cir. 2003) ..................................................................................8

**<u>Statutes</u>**

CLRA ..........................................................................................................5, 12, 14, 16

Consumer Fraud Act ..............................................................................................8

FAL ...................................................................................................................12, 16

FDCA ...............................................................................................................6, 7

Food, Drug, and Cosmetic Act ............................................................................6

N.Y. U.C.C. § 2–313(1)(a) ..............................................................................23

N.Y. U.C.C. § 2–607(3)(a) ..............................................................................24

N.Y. U.C.C. § 2-314(2).....................................................................................23

New York Uniform Commercial Code.............................................................23

Ohio's Deceptive Trade Practices Act, New Jersey's Consumer Fraud Act, and
North Carolina's Unfair Trade Practices Act......................................................5

UCL..........................................................................................................12, 14, 16

## **<u>Other Authorities</u>**

21 C.F.R. § 176.170 § 177.1550, 21 C.F.R. § 175.300 ....................................6

Federal Rule of Civil Procedure 9(b)........................................................ *passim*

Federal Rule of Civil Procedure 12(b)(6) ....................................................7, 21

Federal Rule of Evidence 201 ............................................................................4

Rule 8 ...............................................................................................................1, 7

Rule 12(b)(1)....................................................................................................7, 8

## INTRODUCTION

Plaintiffs Daian Onaka, Torshia Woods, Sheli Zeller, Margo Ferguson, and Eva Bailey attempt to premise a false advertising case against Shiseido Americas Corporation ("Shiseido") on speculation that five bareMinerals brand foundations, concealers, and lip care products (the "Products") contain an unidentified substance in the group of chemicals called per-and polyfluoroalkyl substances ("PFAS"), which is a group composed of thousands of diverse chemicals. As pleaded in the Complaint, the only shared chemical characteristic of the PFAS group is that they contain two elements on the periodic table—carbon bonded with fluorine.

More troublingly, Plaintiffs have brought this nationwide class action Complaint without identifying any *specific* PFAS in any of the Products, and therefore only allege the unnamed chemical at issue is "potentially harmful." Indeed, the entire factual basis for the core allegation is one conclusory sentence: "Plaintiffs tested each type of the Products they purchased, and each contained PFAS." No further detail is provided about Plaintiffs' basis for alleging the presence of PFAS or which PFAS are at issue. In an attempt to overcome the lack of specific testing, Plaintiffs try to imply that all PFAS are harmful (without expressly stating so), by citing to a number of scientific and regulatory sources concerning PFAS. But the cited sources do not say that all PFAS are harmful. Instead, they substantiate that PFAS are a diverse group of substances with varying impacts on humans and the environment. Plaintiffs' conclusory and speculative allegations, disproved by the cited sources in their Complaint, are insufficient to confer Article III standing.

The Complaint also fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, and even a Rule 8 plausibility standard for that matter, in two ways. By failing to identify the "what" of the case—what chemical or chemicals are actually at issue—Plaintiffs have failed to adequately investigate the claims of fraud and do not provide even basic notice to Shiseido of the allegations against which it must defend. Moreover, the Complaint is premised on

false advertising, but Plaintiffs provide no detail about "what" advertising they reviewed and relied on in purchasing the Products. This failure is particularly telling here because Plaintiffs do not identify even a single label statement that they assert to be false or misleading, meaning there is no statement Plaintiffs each would have reviewed and relied on.

The advertising statements the Complaint does identify are not actionable under the reasonable consumer test. They are generic statements on bareMinerals' website that are not tethered in any manner to the Products. The statements do not assert the Products are free of bonded fluorine and carbon or PFAS. Moreover, the statements are not measurable or capable of being proven true or false, and come nowhere near being deceptive to a reasonable consumer.

Accordingly, Shiseido respectfully requests that the Court dismiss the Complaint.

## BACKGROUND

### I.   <u>Overview of Complaint</u>

Plaintiffs allege the Products are falsely advertised because they contain unidentified substances that are within Plaintiffs' definition of a group of chemicals called PFAS. No specific chemical is alleged to be in the Products. Instead, Plaintiffs speculate that all the substances in the PFAS group are of concern simply because they contain two elements—fluorine bonded to carbon. Compl. ¶ 37. Of course, Plaintiffs do not allege that they have actually been physically harmed by PFAS as a group or any specific PFAS. Instead, the Complaint simply asserts that the "claims are economic in nature." *Id.* ¶ 78. Plaintiffs' theory of damages is that they "received something worth less than what they paid for and did not receive the benefit of their bargain." *Id.* ¶ 79.

Plaintiffs allege the Products contain PFAS only on the basis that they "tested each type of the Products they purchased, and each contained PFAS." *Id.* ¶ 15. They do not allege that any specific PFAS were detected, at what level PFAS (or any specific PFAS) were detected, or what

kind of testing method was used to identify PFAS.  They also do not allege which named Plaintiff tested which Product, or if it was their counsel who purchased and tested the Products.

The Complaint itself concedes that testing for specific PFAS is available and appropriate. The Complaint relies on a study of PFAS and cosmetics by a researcher at Notre Dame University. That study tested certain cosmetic products (not the Products here) for fluorine, which the study assumed was a "surrogate" for the presence of PFAS as a group.  *Id.* ¶ 46-47 ("In order to analyze the presence of PFAS, the Study used a marker for PFAS—the chemical fluorine . . .").  However, the study went a step further and tested products for *specific* PFAS.  *Id.* ¶ 49 ( "samples from 29 of the products" were analyzed using a method "that could identify 53 specific PFAS chemicals."). Plaintiffs *do not* allege that they have done this second set of testing—for specific PFAS.  Based on  Plaintiffs'  generic  testing  allegation,  and  the  cited  Notre  Dame  study,  it  is  apparent  the Complaint is not premised on testing for any specific PFAS.

Plaintiffs characterize PFAS as only "potentially harmful," apparently recognizing that not all PFAS are harmful.  *Id.* ¶ 11; *see also id.* ¶ 43 ("the potential health and environmental risk of PFAS in cosmetics"); *Id.* ¶ 66 ("potential for harm of PFAS").  Moreover, many of Plaintiffs' scientific assertions concerning PFAS as a group are false and are contradicted by the cited source in the Complaint.  For example, Plaintiffs assert that conservatively 70% of PFAS are dermally absorbed through human skin.  *Id.* ¶ 58.  In making this assertion, Plaintiffs' reference a 2018 Danish EPA study, which only discussed the dermal absorption of PFOA, a specific kind of PFAS.

*Id.*; Request for Judicial Notice and Incorporation by Reference ("RJN"),[1] Ex. A.[2]  Plaintiffs also

assert that a National Toxicology Program ("NTP") study found that PFAS have adverse effects

on human organ systems, citing an NTP webpage.  Compl. ¶ 59 n.28.  This assertion is directly

contradicted by the cited NTP page, which says the study was conducted on rats and tested only

for a few specific PFAS.  RJN, Ex. B.  Throughout the Complaint, Plaintiffs try to lump all PFAS

together as harmful, despite not citing data supporting that premise.  *See, e.g.*, *id.* ¶ 36 n.16; RJN,

Ex. C (alleging that all PFAS are "potentially harmful," when the cited Environmental Protection

Agency ("EPA") source says "[s]cientific studies have shown that exposure to *some* PFAS in the

environment may be linked to harmful health effects in humans and animals." (emphasis added);

*id.* ¶ 66 n.33; RJN, Ex. D (stating there is a scientific consensus for persistence and potential harm

of PFAS, when the cited Madrid Statement says "some long-chain PFASs have been found to

cause liver toxicity . . .", "associations between specific long-chain PFASs and adverse outcomes",

and "some shorter-chain fluorinated alternatives seem to be less bioaccumulative").

    Plaintiffs' false advertising case is premised on only generic and general online

bareMinerals "clean" marketing claims that are not tied, in any manner, to the Products.  *See*

Compl. ¶¶ 2-3, 8-9, 32-35, 67-74.  For example, the Complaint pleads that the brand makes "100%

free" claims about certain chemicals, providing a link to a bareMinerals webpage.  *Id.* ¶ 8 n.11.

However, that webpage specifically states what substances bareMinerals products are 100% free

from: "parabens, phthalates, formaldehyde, chemical sunscreens, triclosan, Triclocarban,

---

[1] The Exhibits cited in this Motion are judicially noticeable under Federal Rule of Evidence 201 and the incorporation by reference doctrine.  *See e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); *International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  The accompany declaration provides true and correct copies of the Exhibits.

[2] The Danish EPA study also determined that the levels of specific PFAS found in the tested products were unlikely to pose a health risk to consumers.  *Id.*

propylene glycol, mineral oil, coal tar, and microbeads." RJN, Ex. E. The Complaint does not allege that Shiseido has ever made a "PFAS-free" representation on the Products or otherwise.

Plaintiffs also do not allege the Products' labels contain any misrepresentations. At most, they try to argue the brand name "bareMinerals" is somehow misleading, because the Plaintiffs apparently believe it implies the Products do not contain PFAS. Compl. ¶ 3. Of course, Plaintiffs specifically plead that "PFAS," as defined in the Complaint, simply means bonded carbon and fluorine, two elements on the periodic table. *Id.* ¶ 37.

Plaintiffs only allege in a conclusory fashion that they "relied" on the identified advertising in purchasing the Products. *Id.* ¶ 193, 204. The Complaint provides no details about what advertising each Plaintiff relied on and when, and to what extent that advertising might have affected their purchasing decisions. Such specificity is particularly lacking here, where no on-label false advertising is alleged.

The Complaint pleads a nationwide class, and California, Mississippi, Ohio, New Jersey, and North Carolina subclasses. *Id.* ¶¶ 138-145. Plaintiffs state causes of action for breach of implied warranty, breach of express warranty, negligent misrepresentation, fraud, California's Consumers Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), Ohio's Deceptive Trade Practices Act, New Jersey's Consumer Fraud Act, and North Carolina's Unfair Trade Practices Act. *Id.* ¶¶ 159-285.

## II.   **The PFAS Group and Their Regulation**

As acknowledged by materials cited in the Complaint itself, PFAS are a broad and diverse group of thousands of different chemicals. A variety of U.S. government agencies recognize, as cited in the Complaint and below, that different PFAS have different impacts on humans and the environment. As a result, different kinds of PFAS would naturally have varying effects on consumer purchasing decisions.

For example, the EPA states: "There are thousands of PFAS with potentially varying effects and toxicity levels, yet most studies focus on a limited number of better known PFAS compounds;" and "exposure to *some* PFAS in the environment may be linked to harmful health effects in humans and animals."   Compl. ¶ 36 n.16; RJN, Exs. F, C (emphasis added). Additionally, in the EPA's list of the various PFAS-related actions it has taken, nearly every referenced action concerns *specific* kinds of PFAS, not all PFAS as a group.  RJN, Ex. G.

Moreover, the Food and Drug Administration ("FDA"), through the Food, Drug, and Cosmetic Act ("FDCA"), has specifically approved the use of some PFAS in the production and distribution of food, after a comprehensive review of their safety.  RJN, Ex. H.  These PFAS are legally used in "cookware, food packaging, and in food processing for their non-stick and grease, oil, and water-resistant properties."  *Id*.  Moreover, FDA has determined that these substances "are safe for their intended use" by conducting "rigorous scientific review before they are authorized for the market."  *Id*.  Numerous organic fluorine chemicals are approved food contact substances that would fall under Plaintiffs' blanket definition of "PFAS" as a substance that contains a carbon-fluorine bond.  *See, e.g.*, 21 C.F.R. § 177.1550, 21 C.F.R. § 176.170, 21 C.F.R. § 175.300.

As to cosmetic products regulated under the FDCA, the FDA does not require pre-approval of ingredients, but it does prohibit the use of some substances.  *See* RJN, Ex. I.  Plaintiffs do not allege the Products contain any substances prohibited by the FDA.  Moreover, the FDA states that PFAS are a "diverse group" of substances used in "a wide range of consumer and industrial products."  RJN, Ex. J.  The FDA explains that certain PFAS are intentionally added to some cosmetics, while other PFAS may "be present in cosmetics unintentionally as the result of raw material impurities."  *Id.*  Finally, the FDA assures consumers: "As the science on PFAS in

cosmetics continues to advance, the FDA will continue to monitor the . . . data and published research and continue to engage with stakeholders." *Id*.

Indeed, at least one Court has recognized that "different PFAS have potentially different health effects", in dismissing a similar complaint on Rule 8 plausibility grounds. *GMO Free USA v. Coty Inc*. et al., No. 2021 CA 004786 B (Superior Court, Washington, D.C.); RJN, Ex. *K*.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when a plaintiff pleads sufficient facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "A pleading that offers labels and conclusions or a formulaic recitation of the elements" or "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 677 n.11. Furthermore, under Rule 12(b)(1), a district court must dismiss a complaint if the plaintiff fails to establish subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

On a motion to dismiss, a court reviews the complaint, matters that are property judicially noticeable, and documents "incorporated by reference." *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). The court is "not to give effect to a complaint's assertions of law or legal conclusions couched as factual allegations . . . ." *Lynch v. City of New York*, 952 F.3d 67, 75-76 (2d Cir. 2020).

On a Rule 12(b)(1) motion, a plaintiff "has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving such a motion, a court "may refer to evidence outside the pleadings." *Id*.

Consumer protection claims, such as those under California, Ohio, New Jersey, and North Carolina statutes, "that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 443-44 (N.D. Cal. 2018) (citation omitted), *on reconsideration in part,* 386 F. Supp. 3d 1155 (N.D. Cal. 2019); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 373-74 (D.N.J. 2015) (holding Rule 9(b) applies to claims under the Consumer Fraud Act); *Topshelf Mgmt., Inc. v. Campbell-Ewald, Co.*, 117 F. Supp. 3d 722, 731-32 (M.D.N.C. 2015) (Rule 9(b) applies where claims allege "detrimental reliance on false or deceptive representations"); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (Rule 9(b) requires that "in any complaint averring fraud or mistake, 'the circumstances constituting fraud or mistake shall be stated with particularity.'"); *Roof Maxx Tech., LLC v. Holsinger*, No. 2:20-CV-03154, 2021 WL 3617153, *3-5 (S.D. Ohio Aug. 16, 2021) (applying 9(b) to Ohio fraud related claims).

## ARGUMENT

Plaintiffs' entire Complaint and all causes of action must be dismissed for three fundamental reasons: (1) Plaintiffs lack Article III standing; (2) the allegations centering on PFAS as a group do not meet Rule 9(b)'s heightened pleading standard, nor do Plaintiffs' allegations of reliance on advertising statements; and (3) the allegations in the Complaint concerning misleading statements do not deceive reasonable consumers, because no misleading label statements are even identified and the online statements are not actionable because they are untethered to the Products, have no bearing on PFAS, and at most constitute non-actionable puffery. Additionally, many of the causes of actions also fail for independent reasons identified in the final section.

## I.      Plaintiffs Lack Article III Standing.

The Complaint should be dismissed with prejudice because Plaintiffs fail to establish that they have standing to bring this action.  Article III requires that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  To establish injury-in-fact, a plaintiff must show that she has suffered "an invasion of a legally protected interest which is []concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992) (internal quotations & citations omitted).  The party seeking to establish federal jurisdiction "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). This applies to named plaintiffs in a class action. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

### 1.      *Plaintiffs Fail to Articulate a Concrete Injury.*

Plaintiffs fail to establish any concrete, economic injury that is not purely speculative. Plaintiffs apparently wish they had not purchased the Products because of the purported presence of "PFAS," but such buyer's remorse does not confer Article III standing. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 280–81 (3d Cir. 2018); *see also* in *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707–08 (9th Cir. 2020)).  In the Second Circuit, speculative allegations, disproved by the cited sources in a complaint, are not sufficient to confer Article III standing. *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011), *cert. denied*, 568 U.S. 1229 (2013).  Moreover, the alleged harm must not be "too remote to constitute injury . . .", *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *1 (S.D.N.Y. Jan. 19, 2022), and speculative alleged injuries, based on

"decrease[s] in value" of products, do not confer standing.  *Berger v. L.L. Bean, Inc.*, 351 F. Supp.

3d 256, 262 (E.D.N.Y. 2018)

Cases from around the country show Plaintiffs lack Article III standing.  In *In re Johnson*

*& Johnson*, the plaintiff alleged that she would not have purchased certain talc products had she

known of the risk of asbestos, but the allegation was insufficient to confer standing:

> The only injury that Estrada alleges is purely economic in nature—that is, that had
> she known more about Baby Powder, she would not have purchased it in the first
> place. But Estrada's wish to be reimbursed for a functional product that she has
> already consumed without incident does not itself constitute an economic injury
> within the meaning of Article III.

903 F.3d 278 at 293.  Likewise, in *Kimca v. Sprouts Markets, Inc.*, a case about heavy metals in

baby food, the court found plaintiffs lacked standing when they failed to "support the conclusion

that the consumption of these products caused a substantially increased risk of future harm to their

children." Civ. A. No. 21-12977 (SRC), 2022 WL 1213488, at *6 (D.N.J. Apr. 25, 2022). The

court reasoned that, while plaintiffs alleged the products contained heavy metals and that elevated

levels can be unsafe, plaintiffs "do not connect these two allegations by establishing that the levels

of heavy metals in the [products at issue] are unsafe." *Id.* at *8 (citation omitted); *see also In re*

*Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (holding

that plaintiff lacked standing in a lead in fruit juice case, because "Plaintiffs paid for fruit juice,

and they received fruit juice, which they consumed without suffering harm. The products have not

been recalled, have not caused any reported injuries, and do not fail to comply with any federal

standards. The products had no diminished value due to the presence of the lead.").

Similarly, in *Koronthaly v. L'Oreal USA, Inc.*, plaintiff alleged she was harmed by lead in

lipstick.  374 F. App'x 257, 259 (3d Cir. 2010).  She had not suffered adverse health effects from

the lipstick, and therefore "asserted only a subjective allegation that the trace amounts of lead in

the lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer Article III standing."

*Id.*  And in *Herrington v. Johnson & Johnson Consumer Cos.*, plaintiffs alleged that bath products contained certain allegedly harmful chemicals and that they would not have purchased the products had this been disclosed.  No. C 09-1597 CW, 2010 WL 3448531, at *1 (N.D. Cal. Sept. 1, 2010).  Plaintiffs lacked standing because they failed to plead "a distinct risk of harm from a defect in Defendants' products that would make such an economic injury cognizable." *Id.* at * 4.

Finally, in the Ninth Circuit, to establish an economic injury under a benefit of the bargain theory, a plaintiff must "alleg[e] that she bargained for a product worth a given value but received a product worth less than that value."  *McGee*, 982 F.3d at 705–06 (quoting *In re Johnson & Johnson,* 903 F.3d at 283) (internal quotations omitted).  "A plaintiff . . . must do more than allege that she 'did not receive the benefit she thought she was obtaining . . . [and] must show that she did not receive a benefit for which she actually *bargained*.'"  *Id.* at 706 (emphasis in original).  In *McGee*, the plaintiff sued a popcorn manufacturer because its product contained artificial trans fats, but the Ninth Circuit held that plaintiff lacked standing because her subjective expectations about the product were not incorporated into the benefit of the bargain.  *Id.* at 702-04, 706.

There are several themes running through these cases supporting dismissal here.  First, a plaintiff may not allege an injury based on speculation and purchasing remorse, especially when the alleged injury is specifically contradicted by sources cited in a complaint.  Plaintiffs' allegations of injury, although economic, are premised entirely on the unconfirmed presence of PFAS as a group, without identifying any specific substance that might actually be harmful.  The citations in the Complaint contradict the assertion that all PFAS are harmful. *See Amidax Trading Grp.*, 671 F.3d at 147 ("where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.") (citation omitted); *see also* Compl. ¶ 11 (recognizing that PFAS are only *potentially*

harmful); ¶ 58 (stating that it is conservative to assume that 70% of PFAS are dermally absorbed, when the cited study only discusses one kind of PFAS, PFOA); ¶ 59 n.28 (asserting an NTP study shows adverse effects of PFAS as a group, when the study only considered a few specific PFAS— from the many thousands that exist—and showed variable results between different PFAS); ¶ 36 n.16 (alleging that all PFAS are "potentially harmful", when the cited EPA website says "[s]cientific studies have shown that exposure to *some* PFAS in the environment may be linked to harmful health effects in humans and animals." (emphasis added)). Thus, Plaintiffs lack standing because their "injury" is speculative and the citations do not support that PFAS as a group, or bonded carbon and fluorine, are harmful.

Second, simply identifying a chemical in a product and asserting an injury in a conclusory fashion, without more, is not sufficient to confer Article III standing. *Koronthaly*, 374 F. App'x at 259; *Herrington*, 2010 WL 3448531, at *1. Plaintiffs do nothing to explain what level of which chemicals are in the Products, and how those allegations would in any manner impact a reasonable consumer's purchasing decision for the Products.

Third, Plaintiffs' alleged injuries are equivalent to those of the *McGee* plaintiff. 982 F.3d at 705–06. Plaintiffs purchased and used the Products and make no allegations that the Products did not perform as advertised. Plaintiffs do not allege any actual personal injury from the Products. They only allege economic injury due to the potential presence of PFAS as a group. This alleged economic injury fails to confer standing because, like in *McGee*, the Products' labels do not make any allegedly misleading statements. Therefore, a "PFAS free" expectation was not a part of the benefit of the bargain for the Products. As such, Plaintiffs have not been economically injured.[3]

---

[3] The only representations identified in the Complaint are online. Plaintiffs provide no details about whether and when they viewed those statements and if they had any impact on their purchasing decision, as discussed *infra*. This does not establish standing. In *Hadley v. Kellogg*

### 2.     *Plaintiffs Fail to Identify a Particularized Injury.*

Plaintiffs also fail to sufficiently allege particularized injury.  *See Lewis*, 518 U.S. at 357.

The only allegation in the Complaint to support the Products contain PFAS is: "Plaintiffs tested

each type of the Products they purchased, and each contained PFAS."  Compl. ¶ 15.  No further

detail, whatsoever, is provided.  In analogous trace chemical products cases, courts have found

that a plaintiff must not only show concrete economic injury—but also a particularized injury—

that they were actually exposed to the chemical at issue from use of the product at issue.  For

example, in *Schloegel v. Edgewell Pers. Care Co.*, the court granted defendants' motion to dismiss

because plaintiff failed to allege that any unit of sunscreen product that the plaintiff purchased for

use contained benzene.  No. 4:21-CV-00631-DGK, 2022 WL 808694, at *2–3 (W.D. Mo. Mar.

16, 2022).  Likewise, in *Doss v. Gen. Mills, Inc.*, the court dismissed the case, which was premised

on the trace level of a pesticide in Honey Nut Cheerios, on the basis of standing, concluding that

the plaintiff failed to allege that the Cheerios she purchased for use contained the pesticide. No.

18-61924-CIV, 2019 WL 7946028, at *2–3 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312

(11th Cir. 2020); *see also Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL

5813422, at *5 (N.D. Cal. Nov. 7, 2019) (holding plaintiff lacked standing for alleged arsenic in

bottled water because he did not allege that the water *he* purchased contained arsenic).

Plaintiffs do not have standing here for similar reasons.  They only allege "they tested each

type of Products they purchased."  Compl. ¶ 13.  This allegation is deficient for two separate

reasons: (1) it does not identify who purchased and tested the Products, which is required for a

---

*Sales Co.*, the court dismissed for lack of standing plaintiff's UCL, FAL, and CLRA claims
because plaintiff made no allegation that she visited defendant's website with the claims at issue,
and therefore her "alleged injury is not 'fairly traceable' to any statements made on Defendant's
website." 243 F. Supp. 3d 1074, 1088 n.1 (N.D. Cal. 2017).

particularized injury, and (2) it is not accompanied by plausible facts to show what kind of PFAS Plaintiffs were exposed to, if any.  As to the former point, the conclusory allegation does not state that Plaintiffs tested any Products they *actually* purchased.  For instance, it could have been their counsel or a third-party advocacy group that purchased and tested the Products.  This allegation is particularly deficient because *there are four* Plaintiffs.  Even if one Plaintiff had purchased one or more of the Products, then had some or all of the Products tested, it is impossible to tell—based on the Complaint's singular allegation—which Plaintiff has standing for what Products. The allegation clearly fails to support a particularized injury of any PFAS exposure to Plaintiffs.

As to the latter point, Plaintiffs do not allege which chemicals they actually tested for, by what method, or what the results of those tests were.  Plaintiffs do not identify even a single chemical in the Products that they allege to be harmful.  And given Plaintiffs' reliance on the Notre Dame study, which conducted two kinds of testing—a fluorine screener test and a test for specific PFAS (¶¶ 46, 49)—it is clear Plaintiffs' one testing allegation does not support a plausible injury. *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 291 (S.D.N.Y. 2015) (stating a plaintiff must "affirmatively and plausibly" plead the facts supporting standing).  The Complaint does not identify whether Plaintiffs are relying on a fluorine screener, a specific PFAS test, or something different altogether. Plaintiffs' vague testing allegation is insufficient to plausibly show a particularized injury.

## II.  The Complaint Does Not Meet Rule 9(b)'s Heightened Pleading Standard.

Federal Rule of Civil Procedure 9(b) requires that claims "sounding in fraud," such as each cause of action alleged here, be stated with particularity.  Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (applying Rule 9(b) to allegations brought under the UCL and CLRA); *see also supra*, p. 8 (citing cases applying Rule 9(b) to the various causes of action).  All claims that arise from a "unified course of fraudulent conduct" must be

pleaded with particularity.  *Arabian v. Organic Candy Factory*, No. 217-CV-05410-ODW-PLA, 2018 WL 1406608, at *3–4 (C.D. Cal. Mar. 19, 2018).

'"The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit."'  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (citations omitted); *see also United States ex rel. Forcier v. Computer Scis. Corp.*, 183 F. Supp. 3d 510, 521 (S.D.N.Y. 2016) ("The purpose of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response.") (citation omitted).  The particularized allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations & citation omitted).  Under Rule 9(b) the "plaintiff must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding that allegations of fraud must be "accompanied by the who, what, when, where, and how of the misconduct charged") (internal quotations & citation omitted).

Plaintiffs' allegation that the Products contain unspecified "PFAS" is insufficient to meet Rule 9(b).  Compl. ¶ 15.  As the Complaint concedes, "there are thousands of varieties of PFAS chemicals in existence, all PFAS contain carbon-fluorine bonds . . . ." *Id.* ¶ 37.  Plaintiffs further concede that fluorine is a "surrogate for PFAS," and the presence of fluorine indicates the group

PFAS are "likely present," not definitively present.  *Id.* ¶¶ 47-48.  Indeed, as set forth in previous sections, many citations in the Complaint support that there are some specific PFAS that are harmful and others that are not.  This conclusion is further buttressed by the EPA and FDA statements on PFAS, as well as the FDA's pre-approval of some PFAS for use in food contact after determining the substances "are safe for their intended use" by conducting "rigorous scientific review before they are authorized for the market."  RJN, Exs. C, F, G, H, J.

Given that all PFAS are not the same—and will have different potential impacts—generic allegations about "PFAS" as a group do not meet the plausibility standard, let alone Rule 9(b)'s heightened pleading standard.  At the pleading stage, Plaintiffs cannot state a claim *without* identifying which particular chemical(s) give rise to the alleged false advertising claims.  And a mere possibility is not enough.

One of Rule 9(b)'s functions is to ensure a defendant can defend against a charge and not be forced to simply generally deny that it has done anything wrong.  At a minimum, Shiseido must be informed as to the "what" of the case—what specific chemical(s) are at issue.  Without such specificity, Shiseido would be deprived of a meaningful opportunity to prove that the substance(s) at issue are not harmful and would not impact reasonable consumers' purchasing decisions.

This conclusion is confirmed by *Andrews v. Procter & Gamble Company*, where the court held that generic PFAS allegations do not meet Rule 9(b)'s heighted pleading standard.  No. EDCV 19-00075 AG (SHKx), 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019).  There, a plaintiff alleged the presence of PFAS in Oral-B dental floss based on a third party study and that PFAS are linked to certain adverse health conditions, in violation of the CLRA, UCL, and FAL.  *Id.* at *1–3.  The court granted the defendant's motion to dismiss because the study at issue in that case was premised only on a fluorine screening test, and plaintiff lacked any testing for particular PFAS

chemicals. *Id.* at *3. The situation here appears to be the same. Plaintiffs' claims rely only a generic statement that the Products were tested, without any indication of the testing method, chemicals tested for, or results. Thus, Plaintiffs apparently lack testing for particular PFAS.

Finally, under Rule 9(b), Plaintiffs have not sufficiently alleged reliance on any of the identified representations. Despite describing Shiseido's online statements, Plaintiffs never claim which advertisements they relied on, viewed, or even were aware of prior to making their purchasing decision. *See, e.g.*, Compl. ¶¶ 3, 86, 193, 204, 223 & 249. "Merely supplying a list of advertisements and the misleading statements that [a defendant] made does not show which specific advertisement or statement that [a plaintiff] actually saw . . . [and] fall[s] short of the specificity required by Rule 9(b)." *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1014 (N.D. Cal. 2014) (dismissing claim alleging plaintiff "reviewed . . . marketing materials and representations" and that his purchase was "'based on those representations,'" as he "fail[ed] to specify which, if any, of these statements [he] personally reviewed and relied on"); *see also Small v. Lorillard Tobacco Co., Inc.*, 679 N.Y.S.2d 593, 604 (1998), *aff'd*, 94 N.Y.2d 43 (1999) (dismissing a complaint in part because the plaintiffs failed to adequately allege reliance on the advertising claims at issue).

Plaintiffs' failure to identify what substances are actually at issue and what advertising Plaintiffs actually relied on mandates dismissal under Rule 9(b).

### III.   <u>Reasonable Consumers Are Not Deceived by the Challenged Representations.</u>

Plaintiffs' claims rest upon generic marketing statements and the brand name "bareMinerals." Compl. ¶¶ 67-74. No identified marketing claims the Products are PFAS-free. Rather than contending the Products' label is deceptive—the actual advertising a consumer would

review when making a purchase—Plaintiffs identify generic and general *online* marketing statements that are unconnected, unrelated and irrelevant to the Products at issue. *Id*. ¶¶ 67-74.

"[C]laims based on . . . misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (citations omitted). "To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish . . . deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2nd Cir. 2013) (citations omitted). A plaintiff "must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bynum v. Fam. Dollar Stores, Inc.*, No. 1:20-CV-06878 (MKV), 2022 WL 837089, at *3 (S.D.N.Y. Mar. 21, 2022) (internal quotations & citations omitted); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). "[A] plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore*, 4 F.4th at 882 (citations omitted)). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Plaintiffs allege that only one statement tied to the Products—the brand name "bareMinerals"—is misleading. Plaintiff asserts that an intentional combination of the words "bare" and "minerals," "convince[s] consumers that its Products are clean and natural" such that a consumer would assume the product does not contain human-made chemicals. Compl. ¶¶ 3, 12 & 67. This is nonsense. The ingredient disclosures for the Products (or essentially *any* cosmetic product) make clear the Products are not literally made of bare minerals and nothing else. For example, the disclosed ingredients for barePRO® Performance Wear Liquid Foundation SPF 20 (one of the Products at issue) include cyclopentasiloxane, trimethylsiloxysilicate, butylene glycol, and bis-butyldimethicone polyglyceryl-3. *See* Compl. ¶ 74 n.45 (referencing product page listing ingredients); *see also* RJN, Ex. L. Reasonable consumers can have no expectation the Products are *exclusively* "bare" "minerals." *See Moore v. Mars Petcare US, Inc.*. 966 F.3d 1007. 1018 (9th Cir. 2020) ("[I]f common sense would not lead anyone to be misled, then the claim may be

disposed of at a motion to dismiss stage.") (citing *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1165-66 (2018)).  Moreover, as Plaintiffs themselves plead—their definition of PFAS is simply bonded carbon and fluorine.  Plaintiffs do not articulate why they believe the inclusion of two atomic elements in the Products is somehow inconsistent with the brand name "bareMinerals".

As to the online advertising statements identified by Plaintiffs, not one of those statements is linked, in any manner, to any of the Products.  The statements are also wholly *unrelated to PFAS.*  These run-of-the-mill, nonspecific marketing statements do not convey any characteristics about the Products, much less whether they contain PFAS.  Compl. ¶¶ 67-74.  Examples of the online statements are listed below:

- "MAKEUP SO PURE AND CLEAN YOU CAN SLEEP IN IT" Compl. ¶ 67;
- "We believe every little choice has the power to make a big difference — for ourselves, our communities, and the world around us. As creators of clean, cruelty-free Products, we support initiatives that create a chain of good — empowering people to look good, feel good and do good for others. We want to help everyone feel THE POWER OF GOOD." Compl. ¶ 70;
- "Long before clean beauty became part of the collective consciousness, we were making clean, natural minerals makeup and skincare. Purity in formulation and uncompromising performance have been our guiding principles since we launched in 1995. Every bareMinerals product is 100% free of parabens, phthalates, formaldehyde, chemical sunscreens, triclosan, triclocarban, propylene glycol, mineral oil, coal tar and microbreads, and we are ALWAYS cruelty-free. Skin-improving formulas with proven performance-that's CLEAN WITHOUT COMPROMISE." Compl. ¶ 73.

These are precisely the kind of statements another Court, considering substantially similar allegations of PFAS in cosmetics, held were insufficient to state a claim.  *See GMO Free USA v. Coty Inc. et al.,* No. 2021 CA 004786 B, at 6 (D.C. Sup. Ct. June 1, 2022), RJN, Ex. K ("These statements about defendants' philosophy and aspirations cannot plausibly be interpreted as a representation that none of their products contains any PFAS chemical or any ingredient in a large class that includes some chemicals which are unsafe or unsustainable.").

The above statements are also not connected to the Products whatsoever. For example, in *Cheslow*, the court considered whether defendant's reference to "chocolate" on its website illustrated defendant's overall deceptive labeling, advertising, and marketing of the product,

Ghirardelli's Premium Baking Chips Classic White Chips, which plaintiff believed contained real chocolate. *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020).  The court held that even if it were to consider the online statements on defendant's website as part of the overall advertising scheme, the word "chocolate" contained on the logo on defendant's website was "not connected" to the product at issue. *Id.*

Like in *Cheslow*, the allegedly misleading online statements here are not actionable. The identified representations consist of broad, general statements completely disassociated from the Products.  It is unreasonable to infer that these statements translate to any qualitative message, let alone that the Products at issue are PFAS-free.  In this context, a "significant portion of the general consuming public" would not believe the snippets quoted by Plaintiffs have any relevance to the existence (or non-existence) of PFAS in the Products, particularly when the Products' labeling is not misleading. *Bynum*, 2022 WL 837089, at *3.

Moreover, Plaintiffs identify only two bareMinerals products with product-specific statements: (1) the Original Loose Powder Foundation (a product not at issue in the Complaint and therefore not an actionable statement (¶ 72)); and (2) barePRO® Performance Wear Liquid Foundation SPF 20.  *Id.* ¶ 74.  Regarding the barePRO® Foundation, Plaintiffs allege that certain online statements are misleading, which include:

- "good-for-skin, 24-hour, lightweight, fill coverage liquid foundation with a natural matte finish," Compl. ¶ 74;
- "GOOD-FOR-SKIN INGREDIENTS," Compl. ¶ 74;
- "The luxuriously creamy liquid contains bamboo stem extract for a naturally matte, soft focus finish, while papaya enzymes gently improve skin's texture both immediately and other time. With good-for-skin ingredients that won't clog pores, barePRO® Performance Wear Liquid Foundation  is Makeup so Pure And Clean You Can Sleep in It™," Compl. ¶ 74;

None of these statements imply the Products are PFAS-free.

Moreover, these statements, and many of the statements identified above, are at most non-actionable puffery. Whether a statement constitutes puffery "is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Industries, Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008), *cert. denied*, 557 U.S. 903 (2009). "Where no reasonable buyer would take [the representation] at face value, there is no danger of consumer deception and hence, no basis for a false advertising claim." *Stokley-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) (quotations omitted & brackets in original) ("[T]erms like "complete" are puffery because they are subjective and cannot be proven true or false.") (citation omitted). "'[M]ere puffing cannot support liability under California consumer protection law." *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (internal quotations & citations omitted); *see also Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) ("A reasonable investor would not believe that, by merely making the broad, general statements cited in this complaint, NYSEG had insured against the risks inherent in diversification.").[4]  "[A] statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Vitt*, 469 F. App'x at 607 (quoting *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)); *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) ("To be actionable, a statement must be specific and measurable and capable of being proven true or false." (internal quotations & citation omitted)); *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038 , 1052-53 (9th Cir. 2008)) (finding the statement "that IKON [] would deliver 'flexibility' in their

---

[4] Other states generally follow the same puffery rules. *See, e.g., Barrett-O'Neill v. Lalo, LLC*, 171 F. Supp. 3d 725, 746 (S.D. Ohio 2016) (discussing puffery as a "statement of opinion or belief such as occurs in 'puffing' [which] generally cannot constitute a misrepresentation . . . ."); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) ("[S]tatements that are conclusory, or that constitute merely vague and ill-defined opinions or puffery are not assurances of fact and thus do not constitute misrepresentations." (internal quotations & citations omitted)).

'cost-per-copy' contracts and that they would lower copying costs for consumers" is not a "quantifiable claim and does not describe (or misdescribe) any specific or absolute characteristic of IKON's service" and "that kind of general assertion is classic puffery"); *Vitt*, 469 F. App'x at 607 (holding that statements such as "durable," "built to withstand reasonable shock," "reliable," "high performance," "high value," "affordable choice," and "ideal student laptop," among other statements, were "generalized, non-actionable puffery because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met'").

Here, statements that bareMinerals products are "clean," "good-for-skin," "cleaner and more natural," and other similar claims are the type of vague and generalized statements that are not measurable or capable of being proven true or false, and therefore are not actionable. *Vitt*, 464 F. App'x at 607. Let alone, three of the identified statements are opinions of influencers and beauty editors (Compl. ¶ 72), which is the very essence of non-actionable puffery. *Newcal Industries, Inc.*, 513 F.3d at 1052–53.

Fundamentally, the Complaint rests on the preposterous assumption that every product company in the United States that has fluorine bonded to carbon in its products (and there are many), that also makes general online statements regarding "clean" products, deceptively advertises its products. Such a position has no basis in the law and is untenable in reality.

## IV.     **The Ancillary Claims All Fail for Independent Reasons.**

Plaintiffs' common law claims fail for the reasons discussed above, and for the independent reasons discussed below.

Plaintiffs' breach of implied warranty claims fail because the Products are fit for their ordinary use and their labels are not alleged to make PFAS free claims. Under the New York Uniform Commercial Code, "[t]o be merchantable, goods 'must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on

the label or container if any.'" *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (quoting N.Y. U.C.C. § 2-314(2)).  Furthermore, "the warranty does not mean that the product will fulfill a buyer's every expectation but simply provides for a minimum level of quality." *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022) (quoting *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015).  Plaintiffs' never plausibly allege the Products are unfit for ordinary use.  The Products—concealers, foundations, and lip care products—are not alleged to not perform as expected, and therefore the implied warranty claims fail.[5]

Plaintiffs' breach of express warranty claims fail to identify any specific warranty made that was relied upon by Plaintiffs.  An express warranty occurs when an "affirmation of fact or promise to [a] buyer which relates to . . . goods and becomes part of the basis of the bargain . . . ." N.Y. U.C.C. § 2–313(1)(a).  For a breach of express warranty claim to prevail under New York law, a plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan 19, 2021) (internal quotations & citation

---

[5] The breach of implied warranty claim must also fail where privity is not alleged with Shiseido. It is well established under New York law that "no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." *Turk v. Rubbermaid Corp.,* No. 21-CV-270 (KMK), 2022 WL 836894, at *10 (S.D.N.Y. Mar. 21, 2022) (citing *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-CV-1228, 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020)).  Plaintiff Zeller alleges that she purchased a product most recently from Amazon (Compl. ¶ 117) and Plaintiff Ferguson alleges that she purchased a product most recently from Ulta (Compl. ¶ 124).  Therefore, their breach of implied warranty claims must fail for this additional reason.

omitted).  Plaintiffs simply fail to plead any specific statement that is an alleged express warranty that the Products were PFAS free.[6]

The negligent misrepresentation claim also fails.  Negligent misrepresentation requires a plaintiff to allege that: "'(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (citations omitted). "New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Brown v. Kerry Inc.*, No. 2-CV-9730 (PGG) (JLC), 2021 WL 5446007, at *7 (S.D.N.Y. Nov. 22, 2021) (citation omitted). "[A] closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the existence of . . . a special relationship . . . ." *Id.* (internal quotations omitted); *Stoltz v. Fage Dairy Processing Indus.*, *S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (explaining that "courts have consistently held that advertisements alone are not sufficient . . . " to allege the existence of a special relationship (collecting cases)) (citation omitted).

---

[6] The breach of express warranty claim also fails as to Plaintiffs Woods, Zeller, Ferguson and Bailey because they did not allege they provided adequate notice of the breach prior to filing the Complaint.  New York law requires that "the buyer must[,] within a reasonable time after [s]he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy . . . ." N.Y. U.C.C. § 2–607(3)(a).  "[T]o adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time."  *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022) (citation omitted).  Plaintiffs state that only Onaka sent a written notice, conceding the others failed to do so.  Compl. ¶ 108.

Plaintiffs do not and cannot plead any special relationship between Shiseido and Plaintiffs that justifies a negligent misrepresentation claim.  The marketing of bareMinerals Products alone is insufficient, and Plaintiffs' transactions with Shiseido are the perfect example of an ordinary buyer and seller.  Plaintiffs, either at a physical location or online store, purchased the Products.[7] A special relationship requires more than this commonplace transaction. *See Brown*, 2021 WL 5446007, at *7. Moreover, Plaintiffs fail to adequately allege reliance upon statements made by Shiseido. Thus, Plaintiffs have failed to establish a claim for negligent misrepresentation.

## CONCLUSION

Shiseido respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

Dated: June 2, 2022

Respectfully submitted,

By: */s/ Lori B. Leskin*
Lori B. Leskin
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, New York 10019
Phone: (212) 836-8541
Lori.Leskin@arnoldporter.com

Willis M. Wagner (admitted *pro hac vice*)
**Arnold & Porter Kaye Scholer LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111
Phone: (916) 534-1044
Will.Wagner@arnoldporter.com

***Attorneys for Defendant Shiseido Americas Corporation***

---

[7] Compl. ¶¶ 101 ("She purchased . . . at bare+Beauty"), 110 ("She purchased . . . from the bareMinerals website") , 117 ("She purchased . . . from Amazon"), 124 ("She purchased . . . from the Ulta website") & 131 ("She purchased . . . from the bareMineals website").