UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DAIAN ONAKA, TORSHIA WOODS,            :
SHELI ZELLER, MARGO FERGUSON, and      :
EVA BAILEY, individually and on behalf of all    :
others similarly situated,                 :
                                           :
                          Plaintiffs,      :          21-cv-10665-PAC
                                           :
            - against -                    :
                                           :          **OPINION & ORDER**
                                           :
SHISEIDO AMERICAS CORPORATION,            :
                                           :
                          Defendant.       :
-------------------------------------------------------------X

Plaintiffs Daian Onaka, Torshia Woods, Sheli Zeller, Margo Ferguson, and Eva Bailey (collectively, "Plaintiffs") bring claims on behalf of themselves and a putative nationwide class and various putative state class actions against Defendant Shiseido Americas Corporation, ("Defendant"), alleging that Defendant misrepresented its beauty products, ("the Products") as "clean" and "natural" when they actually contain per- and polyfluoroalkyl substances ("PFAS"). Plaintiffs allege (1) breach of implied warranty; (2) breach of express warranty; (3) negligent misrepresentation; (4) fraud; and violations of the (5) California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq*; (6) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (7) the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (8) the Ohio Deceptive Trade Practices Act, ("ODTPA"), Ohio Rev. Code §§ 4165.01, *et seq*.; (9) the New Jersey Consumer Fraud Act, ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq*., and (10) the North Carolina Unfair Trade Practices Act, ("NCUTPA"), N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq*. Defendant moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Defendant's motion is **GRANTED**.

**BACKGROUND**

### I.   Advertising Campaign

Defendant is "one of the largest cosmetic companies in the world, with a portfolio including dozens of high-end brands," including the brand "bareMinerals." Compl. ¶¶ 3, 33, ECF No. 1. bareMinerals "differentiates itself in the highly competitive beauty market by uniformly advertising its products as being 'free of harsh chemicals and unnecessary additives, and full of . . . natural minerals,' 'rigorously safety tested,' 'pure,' and 'clean, conscious beauty that's good to your skin, good for the community and good for the planet.'" *Id.* ¶ 2 (internal citations omitted).

bareMinerals produces various cosmetic products, "including foundation, lipstick, mascara, and other makeup for the face, eyes, and lips" and sells its Products at mass market beauty retailers and department stores in the United States, at bareMinerals' own retail stores, and online through online retailers and bareMinerals' own website. *Id.* ¶¶ 29, 31. "However, contrary to bareMinerals name, business model and purpose, representations and consumer expectation of clean products" its Products contain PFAS chemicals "that are known to be potentially harmful to humans and the environment." *Id.* ¶ 76.

There are "thousands of varieties of PFAS chemicals in existence," but all contain carbon-fluorine bonds, making them "highly persistent in the environment and human bodies" and earning them the nickname "forever chemicals." *Id.* ¶¶ 37, 38. According to the Food and Drug Administration ("FDA"), PFAS may be "intentionally added" to certain cosmetic products to "condition, smooth or make skin appear shiny" and "to increase [a cosmetic's] durability and water resistance." *Id.* ¶ 40. Various studies indicate that PFAS—particularly when used in cosmetics near the eyes, mouth, and skin—may have adverse effects on a consumer's health, including "increased cholesterol, liver inflammation, increased blood pressure in pregnancy, decreased birth

rate of children, decreased vaccine response in children, and increased risk of kidney or testicular cancer," among other negative health effects. *Id.* ¶¶ 51–66.

Despite marketing its products as "clean" and "natural," *id.* ¶ 74, Defendant does not disclose that its products contain PFAS. *Id.* ¶ 15.   Plaintiffs, however, "tested each type of the Products they purchased, and each contained PFAS." *Id.*   Defendant's "uniform, pervasive marketing messaging that [bareMinerals'] product line is 'clean' and 'natural'" leads consumers to purchase the Products with the expectation that the Products will be "free from potentially harmful chemicals" when they, in fact, contain PFAS. *Id.* ¶¶ 74, 76.   "Reasonable consumers would consider PFAS a harmful chemical and would not expect it would be in the Products." *Id.* ¶ 77.  Had Plaintiffs known that the Products contained PFAS, they would not have purchased them or would have paid less for them. *Id.* ¶ 17.

## II.    **Individual Plaintiffs**

Daian Onaka is a resident and citizen of San Jose, California. *Id.* ¶ 23.  She purchased the Products, including BAREPRO® Performance Wear Liquid Foundation SPF 20, BAREPRO® 16-Hr Full Coverage Concealer, Original Liquid Mineral Foundation, GEN NUDE® Matte Liquid Lipstick, most recently in September 2021,[1] at bare+Beauty, a bareMinerals outlet store located in Livermore, California. *Id.* ¶ 101.  She brings claims individually and on behalf of all persons residing in the United States and California who purchased the Products "[d]uring the fullest period allowed by law." *Id.* ¶¶ 138, 139.

---

[1] Other than a single "most recently" purchased-on date, the Complaint does not allege any other specific times any Plaintiff purchased any Product.  The Complaint also generally alleges that Plaintiffs purchased and used the Products "within the relevant time period" without defining the relevant time period. *See, e.g*, Compl. ¶ 23, ECF No. 1.

Torshia Woods is a resident and citizen of Horn Lake, Mississippi. *Id.* ¶ 24. She purchased the Products, including BAREPRO® Performance Wear Liquid Foundation SPF 20 and Original Liquid Mineral Foundation, most recently on October 15, 2021, directly from the bareMinerals website. *Id.* ¶ 110. She brings claims individually and on behalf of all persons residing in the United States and Mississippi who purchased PFAS Makeup "[d]uring the fullest period allowed by law." *Id.* ¶¶ 138, 140.

Sheli Zeller is a resident and citizen of Franklin, Ohio. *Id.* ¶ 25. She purchased the Products, including BAREPRO® Performance Wear Liquid Foundation SPF 20 and GEN NUDE® Matte Liquid Lipstick, most recently on October 11, 2021, from Amazon. *Id.* ¶ 117. She brings claims individually and on behalf of all persons residing in the United States and Ohio who purchased the Products "[d]uring the fullest period allowed by law." Compl. ¶¶ 138, 141.

Margo Ferguson is a resident and citizen of Clifton, New Jersey. *Id.* ¶ 26. She purchased the Products, including BAREPRO® Performance Wear Liquid Foundation SPF 20, most recently on January 15, 2021, from the Ulta website. *Id.* ¶ 124. She brings claims individually and on behalf of all persons residing in the United States and New Jersey who purchased the Products "[d]uring the fullest period allowed by law." *Id.* ¶¶ 138, 142.

Eva Bailey is a resident and citizen of Marion, North Carolina. *Id.* ¶ 27. She purchased the Products, including BAREPRO® Performance Wear Liquid Foundation SPF 20, most recently on March 4, 2021, from the bareMinerals website. *Id.* ¶ 131. She brings claims individually and on behalf of all persons residing in the United States and North Carolina who purchased PFAS Makeup "[d]uring the fullest period allowed by law." Compl. ¶¶ 138, 143.

Each Plaintiff alleges that she purchased the Products believing they were "clean, natural, and free from harmful chemicals . . . like PFAS." *Id.* ¶¶ 103–04; 112–13; 119–20; 126–27; 133–

34.   Plaintiffs "looked at the product's packaging prior to her purchase, but nowhere on the packaging did Defendant disclose the presence of PFAS chemical in the [the Products]." *Id.* ¶ 105, 114, 121, 128, 135.  Had they been aware of "the presence of potentially harmful chemicals, like PFAS, in the PFAS Makeup, [they] would not have purchased the PFAS makeup or would have paid significantly less." *Id.* ¶ 106, 115, 122, 129, 136.

## DISCUSSION

### I.  Legal Standard Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden. The task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal citation omitted).  When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the court "must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 56–57 (cleaned up).  "However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action." *Akridge v. Whole Foods Mkt. Grp., Inc.*, 20 Civ. 10900 (ER), 2022 WL 955945, at *3 (S.D.N.Y. Mar. 30, 2022); *see also  FW/PBS, Inc. v. City Of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [ ] allege facts demonstrating that he is a proper party

to invoke judicial resolution of the dispute," he does not have standing under Article III. (internal quotation marks and citation omitted)). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations and quotations omitted).

## II. Article III Standing

The crux of Defendant's 12(b)(1) challenge is that Plaintiffs lack Article III standing. To satisfy the "'irreducible constitutional minimum' of standing," a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff must have a "personal stake" in the case. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). For an injury to be "concrete," it "must actually exist." *Spokeo*, 578 U.S. at 340. Concrete injuries include "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 141 S. Ct. at 2206.

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). Thus, "[f]or each claim asserted

in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331-32 (S.D.N.Y. 2012) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)).

Defendant argues that Plaintiffs lack Article III standing because the Complaint does not adequately allege that Plaintiffs suffered an injury-in-fact.[2]   As a threshold matter, Defendant is incorrect that that an economic injury-in-fact based on "buyer's remorse" does not confer Article III standing.   In arguing that Plaintiffs' theory of injury is unavailable, Defendant relies on out-of-Circuit precedent.   Def. Mem. of Law at 9–10, ECF No. 29.   But in the Second Circuit, "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021); *see also Lin v. Canada Goose US, Inc.*, --- F. Supp. 3d. ---, ---, 2022 WL 16926312, at *3 (S.D.N.Y. Nov. 14, 2022) (collecting cases).[3]   Each Plaintiff alleges that had she been aware of "the presence of PFAS chemicals in the [Products], she would not have purchased the [the Products] or would have paid significantly less," *see* Compl. ¶¶ 106, 115, 122, 129, 136, and therefore likewise alleges an acceptable category of Article III injury.

---

[2] The Court's "standing analysis must proceed on a claim-by-claim basis." *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 138 (D. Conn. 2015) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).   As the parties appear to agree that Plaintiffs' Article III economic injury is the same for each claim, the Court likewise does the same.

[3] Courts in this District that have analyzed the logic of some of the cases cited by Defendant have likewise rejected them as inapplicable in this Circuit. *See, e.g., Duchimaza v. Niagara Bottling, LLC*, --- F. Supp. 3d.---, ---, 2022 WL 3139898, at *5–6 (S.D.N.Y. Aug. 5, 2022); *Borkenoff v. Buffalo Wild Wings, Inc.*, 16-cv-8532 (KBF), 2018 WL 502680, at *3–4 (S.D.N.Y. Jan. 19, 2018).

Defendant next claims the Plaintiffs lack standing because the Complaint does not specify which PFAS were present in the tested Products; that no reasonable consumer would consider all PFAS in any quantity harmful; and that Defendant made no deceptive misrepresentations or omissions in its marketing of the Products. Despite framing its arguments as addressing standing, Defendant's argument is little more than a dispute over how best to read the Complaint in a light most favorable to the Plaintiffs. If the Plaintiffs' allegations are accepted as true, consumers may have paid too much for the Products based on Defendant's misleading representation and omission. Any challenges to the merits of Plaintiffs' claims regarding Defendant's allegedly misleading representations and omissions are not properly considered under Article III.

However, while an Article III injury premised on a price premium theory is available to Plaintiffs, they still "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 65–66 (2d Cir. 2021). "While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003). Here, the Court agrees with Defendant that Plaintiffs have failed to meet their burden.

In consumer fraud and related claims cases, a Complaint that alleges facts demonstrating it is at least plausible that a plaintiff purchased a misbranded product sufficiently confers Article III standing. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017). For example, a plaintiff can allege that her purchased products actually were misbranded, *see Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 239 (S.D.N.Y. 2022); "that a third-party investigation has revealed defects in the same line of such products" as those she purchased, *Clinger v. Edgewell Personal*

*Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) (citing *John*, 858 F.3d at 732), or by alleging a "broad systematic fraud in a market in which [plaintiffs] regularly transact[]". *Wilson v. MasterCard*, 21-CV-5930, 2022 WL 3159305, at *5 (S.D.N.Y. Aug. 8, 2022).

Plaintiffs maintain that at the motion to dismiss stage, they are not required to demonstrate that they actually purchased adulterated products because they are asserting an economic injury, not one based on physical harm. Plaintiffs' argument misses the mark. Under Plaintiffs' theory of economic injury, they were injured because they overpaid for misbranded and/or inadequately labeled Products and the Products were misbranded because they contained PFAS contrary to Defendant's pervasive "clean" and "natural" marketing. *See, e.g.*, Compl. ¶¶ 78–81, 95; Pl.'s Opp'n at 6. Plaintiffs must therefore allege facts making it at least plausible that one of them purchased a Product that was misbranded, *i.e.*, that contained PFAS. They have failed to do so.

Plaintiffs' single allegation of independent testing is inadequate. For one, the Complaint does not allege that Plaintiffs tested any of their own purchases for PFAS. The Complaint merely states "Plaintiff tested each *type* of Products they purchased, and each contained PFAS." Compl. ¶ 15 (emphasis added). As Defendant highlights—without objection from Plaintiff—this merely expresses that Plaintiffs tested the same kind of Products from the same line of Products that they themselves had purchased, not that they tested their own purchases. This need not be fatal, if the independent testing is "reasonably near in time" to Plaintiffs' own purchases. *See Clinger*, 2023 WL 2477499, at *4. The Complaint, however, fails to state when Plaintiffs' independent testing was conducted and therefore makes it nothing more than a "sheer possibility", *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), that Plaintiffs' purchases likewise contained PFAS.

Nor have Plaintiffs plausibly alleged that the presence of PFAS in the Products is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once. Plaintiffs provide no facts from which the Court could extrapolate that their isolated testing should apply broadly to Defendant's Products, regardless of when they were purchased. The Complaint does identify several studies, articles, and blog posts that indicate a generalized presence of PFAS in cosmetics. *See, e.g.*, Compl. ¶ 58 (citing Danish study analyzing presence of PFAS in twenty-two unidentified cosmetics); ¶ 36 n.16 (citing article that notes PFAS "are found in many different consumer, commercial, and industrial products"). However, courts repeatedly emphasize that the third-party testing or investigation must address misbranding at least by the same manufacturer at issue in plaintiffs' case. *See, e.g.*, *Clinger*, 2023 WL 2477499, at *3 ("[A] product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the *same line of such products*." (emphasis added)); *John*, 858 F.3d at 736–37 (relying on state regulatory investigation that found the defendant specifically mislabeled products likely purchased by plaintiff).

Notably, the Complaint does not allege that any of its sources show that Defendant's cosmetics contain PFAS. Based on the Court's own examination,[4] only one study cited in the Complaint found PFAS in some of Defendant's cosmetics. *See* Compl. ¶ 40 n. 20 (citing Heather Whitehead et al., *Fluorinated Compounds in North American Cosmetics*, ENVIRON. SCI. TECHNOL. LETT. (June 15, 2021) https://pubs.acs.org/doi/10.1021/acs.estlett.1c00240) (last accessed Mar. 21, 2023)). That study, however, does not list which of line of Products were tested (therefore leaving to speculation that they were from the same line as those purchased by Plaintiffs)

---

[4] In deciding a motion to dismiss, the court may consider documents, such as this, "that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

and only tested cosmetics purchased from 2016 through 2020. *Id.* The Complaint does not allege

that any Plaintiff purchased Products before 2021, further rendering the study too remote to raise

Plaintiffs' claims to plausible. *See, e.g.*, *Wilson*, 2022 WL 3159305, at *5 ("Further illustrating

the disconnect between her allegations of a systematically fraudulent market and her own potential

injury, she alleges that she began using her Mastercard credit card in November 2018, outside the

period she allegedly analyzed.").

Even if the Court assumed that the Complaint adequately alleges that the Defendant

regularly sold products containing PFAS, it is still not plausible that Plaintiffs overpaid because

the Complaint does not provide any nonconclusory allegations that the Plaintiffs purchased the

Products with any regular frequency. *See, e.g.*, Compl. ¶ 23, 102; *see also Akridge*, 2022 WL

955945, at *7 (holding that plaintiff did not have standing to bring a mislabeling claim where he

alleged only that he purchased "numerous" items that the FDA found were part of a "pattern" of

mislabeling by defendant) ; *cf. John*, 858 F.3d at 734, 736 (finding the "critical" portion of standing

claim was that plaintiff pled not only that he was a frequent shopper, but that he purchased

Defendant's products approximately once or twice a month, and that the systematic overcharging

occurred nearly 90% of the time). The only nonconclusory statements regarding Plaintiffs'

purchases are that each Plaintiff "purchased the [the Products]," that she "previously purchased"

the Products, and a single "most recently" purchased-on date in 2021. Compl. ¶¶ 101–02, 110–

11, 117–18, 124–25, 131–32. This is a far cry from the repeated purchases within a specified

period alleged by other plaintiffs that have allowed courts to infer a plausible likelihood of a past

injury. While it may have been plausible that the Plaintiffs were injured had they shown either

timely third-party findings related to PFAS in the same line of Products as those purchased by

Plaintiffs or that the Plaintiffs' purchased the Products with any regular frequency, the absence of both renders their claims too speculative to confer standing.

The Court also notes that Plaintiffs recently submitted as supplemental authority an opinion from within this Circuit addressing a similar issue. *See* Pl.'s Not. of Supp. Auth., ECF No. 38 (attaching *Clinger*, 2022 WL 2477499).  While this decision was issued after the briefing period for the instant motion in this case closed, the underlying cases it relied on were not.  Thus, despite having the full opportunity to address this issue in their opposition—and failing to do so—Plaintiffs' now seem poised to request that the Court graft the *Clinger* court's reasoning onto their briefing.

In any event, *Clinger* is readily distinguishable from Plaintiffs' case.  In *Clinger*, the plaintiffs relied on a third-party study by a consumer protection organization that found products in the same line as those purchased by plaintiffs were misbranded.  *Clinger*, 2022 WL 2477499, at *1.  As discussed above, Plaintiffs' have failed to include any third-party testing of Defendant's cosmetics that Plaintiffs purchased.  Further, while the *Clinger* plaintiffs also conducted their own independent testing of the same line of products as those they purchased like Plaintiffs did here, such testing, unlike here, made the plaintiffs' claims plausible if the testing was "reasonably near in time" to their purchases.  *Id.* at *1, *4.  Nor did the *Clinger* court rely solely on plaintiffs' independent testing; rather, plaintiffs also attached the third-party study.  Finally, the plaintiffs in *Clinger* purchased their products over a three-year period spanning from 2019 through 2021.  *Id.* at *2.  Again, other than the single purchase associated with each Plaintiff in 2021, the Complaint fails to allege when and how frequently the Plaintiffs' purchased the Products.  While Article III standing merely requires that a plaintiff plead facts making it plausible she purchased a misbranded product, Plaintiffs' generalized allegations fail to clear even this low mark.

Because the Court finds that Plaintiffs fail to adequately allege Article III standing, it does not reach the remainder of Defendant's arguments, including its request for judicial notice, the applicability of Rule 9(b), and failure to state a claim under Rule 12(b)(6).  *See, e.g., Carlone v. Lamont*, No. 21-871, 2021 WL 5049455, at \*4 n.4 (2d Cir. Nov. 1, 2021) (summary order).

## <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss the Complaint.  Defendant's request for oral argument is denied.  Although Defendant requests that the Complaint be dismissed with prejudice, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice rather than with prejudice" because such "a dismissal is one for lack of subject matter jurisdiction." *Carter*, 822 F.3d at 54–55.  Plaintiffs have 21 days to file an Amended Complaint, should they so desire.  The Clerk of Court is respectfully directed to close the motion at ECF No. 27.

Dated: New York, New York
March 27, 2023

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge

13