**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAIAN ONAKA, TORSHIA WOODS, SHELI
ZELLER, MARGO FERGUSON, and EVA
BAILEY, individually and on behalf of all
others similarly situated,

                Plaintiffs,

   -vs.-


SHISEIDO AMERICAS CORPORATION,

               Defendant.

Civil Case No. 1:21-cv-10665-PAC

Judge Paul A. Crotty

Oral Argument Requested


**DEFENDANT SHISEIDO AMERICAS CORPORATION'S MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and (6)</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.    Procedural History. ..................................................................................................... 2

II.   Overview of the Allegations in the First Amended Complaint. ................................. 2

III.  The PFAS Group and Their Regulation. .................................................................... 5

LEGAL STANDARD ............................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.    Plaintiffs Lack Article III Standing ............................................................................ 8

II.   Reasonable Consumers Are Not Deceived by the Challenged Statements or Alleged
      Omissions ................................................................................................................... 11

III.  Plaintiffs Do Not Meet the Heightened Pleading Standard of Rule 9(b) ................. 17

IV.   Plaintiff's Claims Are Preempted by Federal law. ................................................... 21

V.    The Ancillary Claims All Fail for Independent Reasons. ......................................... 23

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Procter & Gamble Co.*,
No. EDCV 19-00075 AG (SHKx), 2019 WL 6520045 (C.D. Cal. June 3, 2019)............................ 20, 21

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
823 F.3d 51 (2d Cir. 2016) ............................................................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................................... 7

*Azoulai v. BMW of N. Am. LLC*,
No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .................................. 13

*Barreto v. Westbrae Nat., Inc.*,
518 F.Supp.3d 795 (S.D.N.Y. 2021) ............................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................................... 7

*Brodie v. Green Spot Foods, LLC*,
503 F. Supp. 3d 1 (S.D.N.Y. 2020) ....................................................................................... 23, 24

*Brown v. Coty, Inc.*,
No. 22 CIV. 2696 (AT), 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ..................... 9, 11, 14, 15, 18, 24

*Brown v. Kerry Inc.*,
No. 2-CV- 9730 (PGG) (JLC), 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)........................ 25

*Bynum v. Fam. Dollar Stores, Inc.*,
No. 1:20-CV-06878 (MKV), 2022 WL 837089 (S.D.N.Y. Mar. 21, 2022) ............................ 12

*Cheslow v. Ghirardelli Chocolate Co.*,
445 F. Supp. 3d 8 (N.D. Cal. 2020)............................................................................................... 15

*Clinger v. Edgewell Pers. Care Brands, LLC*,
No. 3:21-CV-1040 (JAM), 2023 WL 2477499 (D. Conn. Mar. 13, 2023) ....................... 18, 19

*Critcher v. L'Oreal USA, Inc.*,
959 F.3d 31 (2d Cir. 2020) ............................................................................................................ 22

*Ctr. for Env't Health v. Perrigo Co.*,
89 Cal. App. 5th 1 (2023)............................................................................................................... 23

*DiMuro v. Clinique Lab'ys, LLC*,
572 F. App'x 27 (2d Cir. 2014) .................................................................................................... 11

*Dwyer v. Allbirds, Inc.*,
    No. 21-CV-5238 (CS), 2022 WL 1136799 (S.D.N.Y. Apr. 18, 2022)................................ 16, 17

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ...................................................................................................... 12

*Gordon v. Target Corp.*,
    No. 20-CV-9589 (KMK), 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ...................... 16, 23, 24

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
    No. 19-CV- 1345 TWR (AGS), 2021 WL 822721 (S.D. Cal. Jan. 22, 2021) .......................... 18

*Harris v. Pfizer Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022) ................................................................................ 16, 17

*Henning v. Luxury Brand Partners, LLC*,
    No. 22-CV-07011-TLT, 2023 WL 3555998 (N.D. Cal. May 11, 2023) .............................. 22, 23

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ............................................................................................................ 4

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................................................... 17

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................................... 7

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .......................................................................................................... 7

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ........................................................................................................ 7

*Moore v. Mars Petcare US, Inc.*.
    966 F.3d 1007 (9th Cir. 2020) ................................................................................................... 15

*Myers v. Wakefern Food Corp.*.
    No. 20-cv-8470-NSR, 2022 U.S. Dist. LEXIS 35981 (S.D.N.Y. Mar. 1, 2022)...................... 16

*Newcal Industries, Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008), *cert. denied*, 557 U.S. 903 (2009)..................................... 12, 13

*Olson v. Major League Baseball*,
    29 F.4th 59 (2d Cir. 2022) ......................................................................................................... 17

*Patane v. Nestle Waters N. Am., Inc.*,
    314 F. Supp. 3d 375 (D. Conn. 2018)........................................................................................ 21

*Richburg v. Conagra Brands, Inc.*,
    No. 22 CV 2420, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023)................................................... 12

*Seidl v. Artsana, USA, Inc.*,
    No. 5:22-cv-02586, 2022 WL 17337910 (E.D. Pa. Nov. 30, 2022)..................................... 15, 18

*Staehr v. Hartford Fin. Services Group, Inc.*,
   547 F.3d 406 (2d Cir. 2008) ................................................................................................ 7

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-CV-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ............................ 25

*Turk v. Rubbermaid Corp.*,
   No. 21-CV-270 (KMK), 2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ................................. 24

*Wynn v. Topco Assocs., LLC*,
   No. 19-CV-11104, 2021 WL 168541 (S.D.N.Y. Jan 19, 2021) ........................................... 24

**Statutes**

21 U.S.C. § 358 ......................................................................................................................... 22

California Health & Safety Code § 109000 ............................................................................... 11

Food, Drug, and Cosmetic Act §§ 379s(a), 379r(a) .......................................................... 2, 5, 22

Health & Safety Code § 109000(a)(3)(B) ................................................................................. 11

N.Y. U.C.C. § 2–313(1)(a) ........................................................................................................ 24

N.Y. U.C.C. § 2–607(3)(a) ........................................................................................................ 25

**Other Authorities**

21 C.F.R. § 201.66 .................................................................................................................... 22

21 C.F.R. § 700.3 ...................................................................................................................... 23

21 C.F.R. § 701.3 ............................................................................................................. 6, 22, 23

21 C.F.R. § 176.170 § 177.1550, 21 C.F.R. § 175.300 .............................................................. 6

Fed. R. Civ. P. 9(b) ......................................................................... 1, 8, 17, 18, 19, 21

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 2, 7, 13

Fed. R. Evid. 201 ......................................................................................................................... 4

**INTRODUCTION**

In dismissing Plaintiffs' initial complaint, this Court held that Plaintiffs had failed to "allege facts making it at least plausible that one of them purchased a product that was misbranded, *i.e.,* that contained PFAS" (Order at 9), and therefore had failed to adequately plead standing sufficient to confer subject matter jurisdiction in this Court. Plaintiffs' First Amended Complaint ("FAC") fails to address the inadequacies identified by the Court and therefore should similarly be dismissed. Specifically, Plaintiffs *still* fail to identify which of the Products they purchased when, and whether their purchased units were actually tested. *See* Order at 9. Plaintiffs also concede in the FAC—for the first time—that they have <u>no</u> testing for any particular PFAS (let alone a harmful one) and instead rely on organic fluorine testing. But organic fluorine does not necessarily mean PFAS and certainly does not establish the presence of a "harmful" PFAS. *See* FAC ¶ 1. The FAC, therefore, fails to establish standing.

The Court's Order dismissed the Complaint under Rule 12(b)(1), and thus did not address the remaining deficiencies identified by Defendant's initial motion. The FAC does nothing to cure those, and Defendants move again on those additional grounds.

First, the FAC fails to identify actionable statements. The statements identified are generic statements on bareMinerals' website that are untethered in any manner to the Products and which have absolutely no bearing on PFAS. Moreover, the statements are not measurable or capable of being proven true or false, and come nowhere near being deceptive to a reasonable consumer. As detailed later, at least four courts around the country in the past year have held these kinds of statements are not actionable in cases involving PFAS.

Second, the FAC fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Plaintiffs do not allege that they actually reviewed, much less relied on, any

of the online statements at issue.  Moreover, the FAC now impliedly concedes that Shiseido had no knowledge about PFAS being in the Products, undercutting any allegation of fraudulent conduct by Defendant.  Finally, the FAC fails to identify "what" chemical or chemicals are actually at issue and thus Plaintiffs have failed to adequately investigate the claims of fraud and do not provide even basic notice to Shiseido of the allegations against which it must defend.

Third, in a last ditch pivot, Plaintiffs try to argue that Shiseido has violated the federal Food, Drug, and Cosmetic Act, despite the Act not including a private right of action.  In taking this position, Plaintiffs make many allegations that are flatly preempted by express preemption clauses in the FDCA related to cosmetic and drug labeling.  For instance, Plaintiffs contend that "PFAS" must be disclosed as an ingredient on the Products' labels, despite FDA-mandated nomenclature recognizing no such ingredient and Plaintiffs' failing to identify a single form of "PFAS" that should be disclosed under federal law.

Accordingly, Shiseido respectfully requests that the Court dismiss the FAC.

## BACKGROUND

### I.    Procedural History.

On December 14, 2021, Plaintiffs filed the original complaint in this action.  Defendants moved to dismiss on Article III grounds as well as under Rule 12(b)(6).  On March 28, 2023, the Court granted Defendants' motion on the basis that Plaintiffs failed to adequately allege Article III standing.  The Court did not reach Defendant's Rule 12(b)(6) arguments.  ECF No. 39 at 13.  On April 18, 2023, Plaintiffs filed the FAC.

### II.   Overview of the Allegations in the First Amended Complaint.

As in the original complaint, Plaintiffs in the FAC allege the Products are falsely advertised because they contain unidentified substances that are within Plaintiffs' definition of

a group of chemicals called PFAS.  No specific chemical is alleged to be in the Products.  In fact, Plaintiffs *do not* allege that they have tested for specific PFAS, instead conceding for the first time they only tested for organic fluorine.  FAC ¶¶ 18-20.  Plaintiffs speculate that all chemicals that are organic fluorine are of concern simply because they contain two elements—fluorine bonded to carbon.  *Id*. ¶ 48.  Of course, Plaintiffs do not allege that they have actually been physically harmed by PFAS as a group or any specific PFAS.  Instead, the FAC simply asserts that the "claims are economic in nature" and that Plaintiffs "received something worth less than what they paid for and did not receive the benefit of their bargain." *Id.* ¶¶ 89-90.

Plaintiffs do not allege which Plaintiff tested which Product, or if it was their counsel who purchased and tested the Products.  Plaintiffs attempt to address the Court's standing concerns only by adding in the FAC when the Products were tested, without any explanation of specifically which Product each Plaintiff purchased and when.  *See, e.g., id.* ¶¶ 206-208.

The FAC concedes that testing for specific PFAS is available and appropriate. It relies on a study of PFAS and cosmetics by a researcher at Notre Dame University and attaches the study as Exhibit A. That study tested certain cosmetic products (not the Products here) for fluorine, which the study assumed was a "surrogate" for the presence of PFAS as a group. *Id*. ¶ 57 ("In order to analyze the presence of PFAS, the Study used a marker for PFAS—the chemical fluorine . . ."). However, the study went a step further and tested products for *specific* PFAS. *Id.* ¶ 60 ("samples from 29 of the products" were analyzed using a method "that could identify 53 specific PFAS chemicals").  Nevertheless, the Plaintiffs proceed with this case only on the basis of organic fluorine testing.

Plaintiffs continue to characterize PFAS as only "potentially harmful," apparently recognizing that only certain PFAS may be harmful. *Id.* ¶¶ 12, 54, 77.  Moreover, many of

Plaintiffs' scientific assertions concerning PFAS as a group are contradicted by the cited source in the FAC.  For example, Plaintiffs assert that conservatively 70% of PFAS are dermally absorbed through human skin.  *Id.* ¶ 69.  In making this assertion, Plaintiffs' reference a 2018 Danish EPA study, which only discussed the dermal absorption of PFOA, a specific kind of PFAS.  *Id.*; Request for Judicial Notice and Incorporation by Reference ("RJN"),[1] Ex. 1.   As detailed later in this Motion, the FAC is replete with allegations concerning "PFAS" the group, when the citations attached to the statements in the FAC concern only particular PFAS.

Plaintiffs do not allege the Products' labels contain any misrepresentations, besides passing references to the trade name "bareMinerals" itself being misleading.  Rather, the FAC is premised on general online bareMinerals "clean" marketing claims that are not tied to the Products.  *See* FAC ¶¶ 2-3, 8-9, 43-46, 78-85, 153-156.  For example, the FAC pleads that the brand makes "100% free" claims about certain chemicals, providing a link to a bareMinerals web page.  *Id.* ¶ 8 n.11.   However, that web page specifically states what substances bareMinerals products are 100% free from:  "parabens, phthalates, formaldehyde, chemical sunscreens, triclosan, triclocarban, propylene glycol, mineral oil, coal tar, and microbeads." RJN, Ex. 2.  A number of online claims added in the FAC are similarly generic.

The FAC only points to a single PFAS related statement in the entire FAC, which was on the bareMinerals website and was in response to a customer inquiry on a single product page. FAC ¶¶ 26, 158.  The comment from bareMinerals truthfully states that PFAS are not used *as an ingredient* in bareMinerals' products.  Notably, both the inquiry and the comment post-date

---

[1] The Exhibits cited in this Motion are judicially noticeable under Federal Rule of Evidence 201 and the incorporation by reference doctrine.  *See e.g., Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  The accompanying declaration provides true and correct copies of the Exhibits.

the filing of the original complaint. *Id.* ¶ 26 (screenshot of comment reflects posting was "4 months" prior and Plaintiffs last visited webpage on March 31, 2023). Plaintiffs do not allege that they ever saw or relied on this comment before purchasing the Products.

The FAC also adds dozens of allegations concerns alleged violations of the federal Food, Drug, and Cosmetic Act ("FDCA"). *Id.* ¶¶ 92-184. Included in this section of the FAC are conclusory allegations that Defendant was required to disclose "PFAS" as an ingredient on the labels and that cosmetics containing PFAS are prohibited by federal law. *Id.* ¶¶ 120, 136, 150.

The FAC pleads a nationwide class, and California, Mississippi, Ohio, New Jersey, and North Carolina subclasses. *Id.* ¶¶ 253-260. Plaintiffs state causes of action for breach of implied warranty, breach of express warranty, negligent misrepresentation, fraud, California's Consumers Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), Ohio's Deceptive Trade Practices Act, New Jersey's Consumer Fraud Act, and North Carolina's Unfair Trade Practices Act. *Id.* ¶¶ 274-401.

### III.   **The PFAS Group and Their Regulation.**

As acknowledged by materials cited in the FAC itself, PFAS are a broad and diverse group of thousands of different chemicals. *Id.* ¶ 20 (stating that there are more than 9,000 PFAS, and then more than 12,000 PFAS, in the same paragraph). A variety of U.S. government agencies recognize that different PFAS have different effects on humans and the environment.

The Food and Drug Administration ("FDA") has a webpage devoted to the use of PFAS in cosmetics and states in pertinent part: "PFAS are a diverse group of human-made chemicals used in a wide range of consumer and industrial products. Certain PFAS are also intentionally added as ingredients in some cosmetic products . . . ." RJN, Ex. 3. "The label of a cosmetic product sold on a retail basis to consumers declares the ingredients in descending order of predominance. Some common PFAS used as ingredients in cosmetics include PTFE" (known

as Teflon).  *Id*.  The FDA also notes that "[s]ome PFAS may also be present in cosmetics unintentionally as the result of raw material impurities . . . ."  *Id*.  Finally, "[a]s the science on PFAS in cosmetics continues to advance, the FDA will continue to monitor the . . . data and published research and continue to engage with stakeholders."  *Id*.

Under the FDCA, the FDA does not pre-approve ingredients, but it does prohibit the use of some substances as ingredients.  *See* RJN, Ex. 4.  PFAS are not prohibited substances.  The FDA requires companies to declare ingredients in accordance with the International Cosmetic Ingredient Dictionary.  21 C.F.R. § 701.3.  Numerous specific PFAS appear in the dictionary, including the commonly used substance PTFE.  RJN, Ex. 5.  PFAS as a group are not listed.

Moreover, the FDA has specifically approved the use of some PFAS in the production and distribution of food, after a comprehensive review of their safety.  RJN, Ex. 6.  These PFAS are legally used in "cookware, food packaging, and in food processing for their non-stick and grease, oil, and water-resistant properties."  *Id*.  And FDA has determined that these substances "are safe for their intended use" by conducting "rigorous scientific review before they are authorized for the market."  *Id*.  Many organic fluorine chemicals are approved food contact substances.  *See, e.g.*, 21 C.F.R. § 177.1550, 21 C.F.R. § 176.170, 21 C.F.R. § 175.300.

The FDA is not alone in its stance on PFAS.  The EPA states: "There are thousands of PFAS with potentially varying effects and toxicity levels, yet most studies focus on a limited number of better known PFAS compounds;" and "exposure to *some* PFAS in the environment may be linked to harmful health effects in humans and animals."  FAC ¶ 47 n.20; RJN, Exs. 7, 8 (emphasis added).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

if it fails to state a claim upon which relief can be granted. To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when a plaintiff pleads sufficient facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements" or "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 677 n.11. Furthermore, under Rule 12(b)(1), a district court must dismiss a complaint if the plaintiff fails to establish subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

On a motion to dismiss, a court reviews the complaint, matters that are property judicially noticeable, and documents "incorporated by reference." *Staehr v. Hartford Fin. Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). The court is "not to give effect to a complaint's assertions of law or legal conclusions couched as factual allegations . . ." *Lynch v. City of New York*, 952 F.3d 67, 75-76 (2d Cir. 2020). On a Rule 12(b)(1) motion, a plaintiff "has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving such a motion, a court "may refer to evidence outside the pleadings." *Id*.

## ARGUMENT

The FAC and all causes of action must be dismissed for four fundamental reasons: (1) Plaintiffs lack Article III standing because they have failed to plead a particularized injury; (2) the alleged misleading statements do not deceive reasonable consumers, because no label statements are identified and the online statements are not actionable; (3) the FAC's failure to

identify particular substances at issue does not meet Rule 9(b)'s heightened pleading standard, nor do Plaintiffs' allegations of reliance on advertising statements; and (4) the claims asserted by Plaintiffs are preempted by the FDCA.  Many of the causes of actions also fail for independent reasons identified in the final section.

## I.   **Plaintiffs Lack Article III Standing.**

Despite the Court's clear order, Plaintiffs have once again failed to plausibly allege that the Products each Plaintiff purchased contained PFAS, which is fatal to their claims.  In their initial Complaint, Plaintiffs alleged that they "tested each *type* of Products they purchased, and each contained PFAS," which this Court found insufficient for several reasons.  *First*, the Court found that Plaintiffs did not allege that they "tested any of their own purchases for the presence of PFAS", reasoning that the Complaint "merely expresses that Plaintiffs tested the same kind of Products from the same line of Products that they themselves had purchased, not that they tested their own purchases."  Order at 9.  *Second*, Plaintiffs did not provide details about the dates of their purchases and the testing sufficient to allege that the testing performed was "reasonably near in time" to their purchases.  *Id.* at 11-12.  In fact, the Court noted that Plaintiffs provided no detail on the frequency of their purchases of each Product, stating only that they made a single purchase in 2021.  *Id.* at 12.  This Court's decision left Plaintiffs with a simple directive: to plead the full facts—the what, where, and when—of the Products they bought and those they tested.

But Plaintiffs failed to do so.  They return to this Court with allegations about their own purchases and testing that are more opaque and convoluted than those that were previously dismissed.  For example, Plaintiff Daian Onaka[2] alleges the following in the FAC:

> 206.   Plaintiff Daian Onaka purchased the PFAS Makeup, including BAREPRO® Performance Wear Liquid Foundation SPF 20, BAREPRO® 16-Hr Full Coverage Concealer, Original Liquid Mineral Foundation, GEN NUDE®

_____
[2] Plaintiffs repeat the same general structure for each individual plaintiff.

Matte Liquid Lipstick. She purchased the PFAS Makeup most recently in September 2021, at bare+Beauty, a bareMinerals outlet store located in Livermore, California.

207.    Each PFAS Makeup product that Plaintiff purchased was tested in either September or October 2021, as described above, in close proximate time to when Plaintiffs conducted testing on the PFAS Makeup Products.

The FAC contains the same information Plaintiffs provided in the original complaint, stated a different way. Onaka alleges that she purchased "the PFAS Makeup"—which Plaintiffs tautologically define as "bareMinerals products, which are marketed as clean and natural beauty products for normal, everyday use, but which contain harmful per- and polyfluoroalkyl substances," (FAC ¶ 1)—*at some point in time*. *Id.* ¶ 206. Onaka then alleges that she purchased at least one item of "PFAS Makeup" most recently in September 2021 and that each Product Plaintiff purchased (at any point in time) was tested in either September or October 2021. *Id.* ¶ 207. Just as in the original complaint, Plaintiffs still fail to provide basic information about what specific Products they bought, when those purchases occurred, and how close in time those purchases were to the testing of the same Product. And Plaintiffs fail to provide this information knowing that this Court has identified it as necessary to plausibly allege injury.

Plaintiffs have also failed to address the deficiencies the Court found in their independent testing or reliance on third-party studies. Plaintiffs do not address the fact that the Notre Dame study (termed by Plaintiffs, the "PFAS Makeup Study") did not specify which bareMinerals products were tested, and that no individual plaintiff alleges to have purchased their products inside the window of the study's testing. *Compare* Order at 10-11 (citing *Whitehead* and noting that the study's testing occurred between 2016 and 2020) *with* FAC ¶ 206 (alleging most recent purchase in September 2021); ¶ 226 (most recent purchase on October 11, 2021); ¶ 235 (most recent purchase on January 15, 2021); and ¶ 244 (most recent purchase on March 4, 2021). Plaintiffs provide no other information about the frequency or timing of their purchases of Products, which,

in addressing similar allegations in the original Complaint, this Court considered "a far cry from the repeated purchases within a specified period alleged by other plaintiffs that have allowed courts to infer a plausible likelihood of a past injury."  Order at 12.

Moreover, Plaintiffs' claims rests on "independent" organic fluorine testing, which Plaintiffs declare correlates to the presence of "potentially harmful" PFAS.   The Court is asked to accept this conclusion as true, but under similar circumstances, Courts in this district have not.  In *Myers v. Wakefern Food Corp.*, the plaintiff purported to rely on independent lab reports to show that the presence of vanilla in defendant's product was artificial but failed "to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors."  No. 20-cv-8470-NSR, 2022 U.S. Dist. LEXIS 35981, at *13-14 (S.D.N.Y. Mar. 1, 2022); s*ee also Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 803 (S.D.N.Y. 2021) ("[T]he analysis on which the Complaint heavily relies does not state or otherwise plausibly support the conclusion that the added vanillin comes from artificial rather than natural sources. . . The results of the . . . analysis list the detected ingredients as including 'vanillin' but it does not purport to identify the source of vanillin as natural or artificial.").  Plaintiffs have pleaded that there are thousands of PFAS in existence.  FAC ¶ 20; *see also* Order at 4, *GMO Free USA v. Coty Inc.*, No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022) (taking judicial notice that different PFAS have different potential health outcomes); Ex. 9.

Notably the FAC *does not plead the level of organic fluorine that was allegedly found in the Products*.  This is troubling, because Plaintiffs justify relying on organic fluorine testing as an indicator of PFAS by citing to California Health & Safety Code section 109000, a California law concerning PFAS in food packaging.  FAC ¶ 21.  But to violate that statute, packaging must test at above 100 parts per million of organic fluorine.  Health & Safety Code § 109000(a)(3)(B).

Plaintiffs do not allege that any of the Products had more than 100 parts per million of organic fluorine.  Even with the benefit of an opportunity to replead, Plaintiffs' vague testing allegations, now admittedly limited to "organic fluorine," do not plausibly show a particularized injury.

Finally, Plaintiffs' attempt to bring this action against "all bareMinerals products that contain PFAS" must be rejected.  FAC ¶ 1, n.1.  Plaintiffs plead that they have only tested five Products for organic fluorine.  *Id*. ¶¶ 18-19.  To expand the case to other bareMinerals' products, Plaintiffs must plead that the other products are "sufficiently similar" to bring a claim against them.  *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (holding that a plaintiff lacks standing to pursue various cosmetic products not purchased by the named plaintiff because the ingredients were different and therefore the "set of concerns" were not "nearly identical" to the concerns of actual purchasers of those products).  Indeed, in *Brown v. Coty, Inc.*, the Court held that the plaintiff's failure to plead why a similar kind of mascara would contain the same PFAS as the tested product prohibited that plaintiff from pursuing a claim against the allegedly similar product.  No. 22 CIV. 2696 (AT), 2023 WL 2691581, at *3 (S.D.N.Y. Mar. 29, 2023).  Here, the FAC does not even attempt to explain how other products are "sufficiently similar" to the Products Plaintiffs purportedly tested.  Therefore, Plaintiffs lack standing to pursue any unnamed and untested products.

## II.   Reasonable Consumers Are Not Deceived by the Challenged Statements or Alleged Omissions.

The FAC contains reference to three different kinds of allegedly misleading statements: (1) a single comment buried on the bottom a product page stating that bareMinerals products do not use PFAS ingredients; (2) numerous online statements that facially do not relate to PFAS; and (3) the brand name bareMinerals.  The FAC also vaguely alleges that the lack of disclosure—an omission theory—is actionable here.  As detailed below, none of these four categories come

close to stating a plausible claim that reasonable consumers have been deceived.

First, the FAC's reference to a response to a comment on a single product display page that bareMinerals does "not use any PFAS as an ingredient in any of our products" is unequivocally not actionable. This is not a "PFAS free" statement, instead it simply states that no PFAS are used as ingredients in the Products. In a substantially similar case involving alleged PFAS in popcorn, where a claim of "only real ingredients" was at issue, the court held that the plaintiff failed to state a plausible claim because consumers would not understand trace PFAS to be an ingredient and therefore the statement was not misleading. *Richburg v. Conagra Brands, Inc.*, No. 22 CV 2420, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023). The exact same analysis is warranted here. In any event, as previously discussed, none of the Plaintiffs saw or related on this statement in making a purchase, because it was posted *after* the original complaint was filed.

Second, the generic marketing statements identified in the FAC, which are all online, are not actionable. The statements at issue do not even reference PFAS or imply any Product is without PFAS. "To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish . . . deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted). A plaintiff "must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bynum v. Fam. Dollar Stores, Inc.*, No. 1:20-CV-06878 (MKV), 2022 WL 837089, at *3 (S.D.N.Y. Mar. 21, 2022) (internal quotations & citations omitted). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741. Whether a statement constitutes puffery "is a legal question that may be resolved on a Rule

12(b)(6) motion." *Newcal Industries, Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008), *cert. denied*, 557 U.S. 903 (2009); *see also Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) ("To be actionable, a statement must be specific and measurable and capable of being proven true or false." (internal quotations & citation omitted)).

The first set of allegations concern barePRO® Performance Wear Liquid Foundation SPF 20 ( *Id.* ¶ 85), a product that the Plaintiffs have not even tested and do not classify as "PFAS Makeup", appear on its product display page but not its label:

- "good-for-skin, 24-hour, lightweight, fill coverage liquid foundation with a natural matte finish," *Id.* ¶ 85;
- "GOOD-FOR-SKIN INGREDIENTS," *Id.* ¶ 85; and
- "The luxuriously creamy liquid contains bamboo stem extract for a naturally matte, soft focus finish, while papaya enzymes gently improve skin's texture both immediately and over time. With good-for-skin ingredients that won't clog pores, barePRO® Performance Wear Liquid Foundation is Makeup so Pure And Clean You Can Sleep in It™," *Id.*

The second set of allegations are various online materials that are not linked, in any way, to any of the Products or any other bareMinerals product. Examples of the online statements are:

- "MAKEUP SO PURE AND CLEAN YOU CAN SLEEP IN IT" *Id.* ¶ 78;
- "We believe every little choice has the power to make a big difference — for ourselves, our communities, and the world around us. As creators of clean, cruelty-free Products, we support initiatives that create a chain of good — empowering people to look good, feel good and do good for others. We want to help everyone feel THE POWER OF GOOD." *Id.* ¶ 81; and
- "Long before clean beauty became part of the collective consciousness, we were making clean, natural minerals makeup and skincare. Purity in formulation and uncompromising performance have been our guiding principles since we launched in 1995. Every bareMinerals product is 100% free of parabens, phthalates, formaldehyde, chemical sunscreens, triclosan, triclocarban, propylene glycol, mineral oil, coal tar and microbreads, and we are ALWAYS cruelty-free. Skin-improving formulas with proven performance- that's CLEAN WITHOUT COMPROMISE." *Id.* ¶ 84.
- "Shiseido responds to the increasing number of consumers that put social responsibility and environmental impact at the top of their purchasing decisions by promoting brands that focus on sustainability such as *bareMinerals*." *Id.* ¶ 153.

These are precisely the kind of statements several other courts around the country, considering substantially similar allegations of PFAS in cosmetics, held were insufficient to state a claim.  In *Solis v. Coty, Inc.*, another case alleging PFAS in makeup, the Southern District of California held that claims that "the Product's label represents the cosmetic is 'dermatologically tested' and 'suitable for sensitive skin,' [] simply fails to draw a cogent nexus between those statements and [plaintiff's] belief the Product she purchased was PFAS-free." No. 22-CV-0400, 2023 WL 2394640, at *7 (S.D. Cal. Mar. 7, 2023).  The court continued: "There is an even weaker link between the statements [Plaintiff] identified in Defendants' online marketing materials and the purported safety benefit [she] believed she had bargained for but did not receive[;] . . . [t]hose statements are far too generalized to reasonably be construed as representations about the Product's PFAS content." *Id.*

In *GMO Free USA v. Coty Inc.*, the plaintiff brought a false advertising suit that alleged the presence of the PFAS group in a cosmetic product was inconsistent with online advertising, including: "COVERGIRL continues to make good-for-you makeup and skincare, prioritizing the health of our consumers and the planet" and "COVERGIRL . . . continu[es] to lead the way as the original clean brand . . . ."  Order at 6, *GMO Free USA*, Ex. 9 (emphasis added).  The court held that these statements "cannot plausibly be interpreted as a representation that none of their products contains any PFAS chemical or any ingredient in a large class that includes some chemicals which are unsafe or unsustainable." *Id.*

In *Brown v. Coty, Inc.*, another PFAS makeup case, the court held that online advertising was not actionable.  2023 WL 2691581, at *4.  The court found that statements similar to those discussed above "are nonactionable puffery" because they are "aspirational company mission statements" that "cannot be objectively measured and cannot be proven true or false."  *Id.*; *see*

*also Seidl v. Artsana, USA, Inc.*, No. 5:22-cv-02586, 2022 WL 17337910, at *1 (E.D. Pa. Nov. 30, 2022) plaintiff "might prefer that [defendant] provide an unambiguous disclaimer that its car seats contain these chemicals, [b]ut [her] own personal preferences are not enough to establish a claim.").

Here, statements that bareMinerals products are "clean," "good-for-skin," "cleaner and more natural," and similar statements are the type of vague and generalized statements that are not measurable or capable of being proven true or false and are thus not actionable. These run-of-the-mill, nonspecific marketing statements do not convey any characteristics about the Products, much less whether they contain PFAS. The statements do not even in any way imply the Products are PFAS free. Finally, the statements do no even appear on the Products' labels and are not even directed at the Products.[3]

<u>Third</u>, Plaintiffs allege that the brand name "bareMinerals" is misleading. Plaintiffs assert that an intentional combination of the words "bare" and "minerals," "convince[s] consumers that its Products are clean and natural" such that a consumer would assume the products do not contain human-made chemicals. FAC ¶¶ 3, 12 & 67. This is nonsense. The ingredient disclosures for the Products (or essentially *any* cosmetic product) make clear the Products are not literally made of "bare" "minerals" and nothing else. For example, the disclosed ingredients for barePRO® Performance Wear Liquid Foundation SPF 20 (one of the Products at issue) include cyclopentasiloxane, trimethylsiloxysilicate, butylene glycol, and bis-butyldimethicone polyglyceryl-3. *See* FAC ¶ 85 n.49 (referencing product page listing ingredients); *see also* RJN, Ex. 10. Reasonable consumers have no expectation the Products are *exclusively* "bare" "minerals."

---

[3] In *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020), the court held that it would not consider online statement untethered to the product, and even if it did, the online logo at issue was "not connected" to the product at issue.

*See Moore v. Mars Petcare US, Inc.*. 966 F.3d 1007, 1018 (9th Cir. 2020) ("[I]f common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage.").  Moreover, as Plaintiffs themselves plead—their definition of PFAS is simply bonded carbon and fluorine.  Plaintiffs do not articulate why they believe the inclusion of two elements in the Products is somehow inconsistent with the brand name bareMinerals.

Fourth, the omission-based theory suggested in the FAC fails.  To succeed on an omission claim, Plaintiff must show that the omissions are "likely to mislead a reasonable consumer." *Harris v. Pfizer*, 586 F. Supp. 3d 231, 244 (S.D.N.Y. 2022) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (1995)).  But a Plaintiff cannot succeed by merely "alleging that Defendant improperly omitted [] information from the Product's label, because a plaintiff can only state a claim for omission . . . 'where the business *alone* possesses *material* information that is relevant to the consumer and fails to provide this information.'"  *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (emphasis added) (quoting *Dixon v. Ford Motor Co.*, No. 14–CV–6135 (JMA)(ARL), 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015)); *see also Dwyer v. Allbirds, Inc.*, No. 21-CV-5238 (CS), 2022 WL 1136799, at *6 (S.D.N.Y. Apr. 18, 2022) (finding that the defendant did not alone possess the allegedly omitted information given public research and industry reports about the issue pleaded in the complaint).  Moreover, a plaintiff must plead that a defendant knows about the material information.  *Harris*, 586 F. Supp. 3d at 244.

Here, Plaintiffs fail to cogently plead that Shiseido exclusively knew about the risk of PFAS in cosmetics or that Shiseido was even aware of such risk in these Products.  The FAC itself alleges that Shiseido may not have knowledge of the presence of PFAS.  It alleges that PFAS can be present in cosmetics due to ingredient *degradation* or *suppliers treating certain ingredients*

with PFAS, and the FAC does not allege that suppliers inform brands of this conduct.  FAC ¶¶ 24-25.  From this, Plaintiffs only allege in conclusory fashion that "Defendants knew, or at minimum should have known, that the PFAS Makeup contains PFAS."  *Id*. ¶ 159.   In short, the FAC fails to plead facts necessary to state a cognizable omission theory that Shiseido failed to disclose the alleged presence of PFAS.  *See, e.g.*, *Harris*, 586 F. Supp. 3d at 244 (dismissing omission-based claims because plaintiffs did not allege defendant knew about trace "contamination in the medication that the plaintiffs purchased at the time they purchased it").[4]

### III.  Plaintiffs Do Not Meet the Heightened Pleading Standard of Rule 9(b).

Plaintiffs do not sufficiently allege fraudulent conduct consistent with the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that claims "sounding in fraud," such as each cause of action alleged here, be stated with particularity.  Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).  Under Rule 9(b) the "plaintiff must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022).

Plaintiffs' allegation that the Products contain unspecified "PFAS" is insufficient to meet Rule 9(b) for three reason: (1) the FAC fails to plead the specifics of the Plaintiffs relying or even reviewing the online statements at issue; (2) Plaintiffs own allegations undermine fraud; and (3) Plaintiffs fail to plead *what* particular PFAS are at issue and *how* all PFAS are harmful, in fact

---

[4] The FAC also acknowledges that the risk of PFAS in cosmetics was publicly available information and therefore could not have been exclusive to Shiseido.  *See* FAC ¶ 22 (discussing the Notre Dame study that tested for PFAS in cosmetics between 2016 and 2020); FAC, at Ex. A; *see also Dwyer*, 2022 WL 1136799, at *6 (dismissing an omission claim because the complaint pleaded industry awareness and environmental research).

citing numerous scientific and governmental sources demonstrating that all PFAS are not harmful.

First, under Rule 9(b), Plaintiffs have not alleged reliance on any of the identified representations. The FAC only describes the online statements at issue but never claims which statements Plaintiffs relied on, viewed, or even were aware of before making their purchasing decision. *See, e.g.*, FAC ¶¶ 2, 3, 43-46, 78, 81-85, 199. "Merely supplying a list of advertisements and the misleading statements that [a defendant] made does not show which specific advertisement or statement that [a plaintiff] actually saw . . . [and] fall[s] short of the specificity required by Rule 9(b)." *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV- 1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021). Indeed, other federal courts considering this exact issue in other PFAS cases—whether off-label statements are actionable—have dismissed the cases on that basis. *See Seidl*, 2022 WL 17337910, at *1 ("there are no facts in the Amended Compliant to suggest that plaintiff relied upon those [online marketing] statements when she purchased the [product]."); *Brown*, 2023 WL 2691581, at *3 ("[S]he does not allege that she or any putative class members relied on these statements when purchasing [the product].") (citations omitted). Plaintiffs' failure to plead reliance on the online statements requires dismissal.

Second, Plaintiffs move away from the theory that Shiseido intentionally added PFAS to the Products, and instead claim that organic fluorine was unintentionally present through degradation or the treatment of certain ingredients by ingredient suppliers. FAC ¶ 24-28. Plaintiffs do not credibly allege that Shiseido knew about this alleged conduct, which directly undermines the knowledge a defendant must have for fraud. *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *15 (D. Conn. Mar. 13, 2023) (holding that plaintiff needed to plead with specificity the defendant knew of the alleged fraud and "a fraud claim that relies merely on the fact that an untrue statement or omission has been made does not satisfy Rule

9(b)'s pleading requirements."). The FAC's allegation that Shiseido "at minimum should have known" about the alleged conduct is insufficient to state claims that sound in fraud. FAC ¶ 159.

Third, The FAC concedes that Plaintiffs have not tested the Products for particular PFAS. Instead, they admit to only testing for "organic fluorine." FAC ¶¶ 18-19. Thus, the FAC fails to identify the "what" of the action—what PFAS are at issue. Moreover, the FAC concedes (in separate statements) that there are more than 9,000 or 12,000 PFAS currently in existence (*id.* ¶ 20), all of which "contain carbon-fluorine bonds." (i*d.* ¶ 48). Plaintiffs also admit that fluorine is only an "indicator" of PFAS (*id.* 20) and the presence of fluorine reflects that the broader group of PFAS are "likely present," not definitively present (*id.* ¶ 49). The FAC characterize PFAS as a group as only "potentially harmful." *Id.* ¶ 12; *see also id.* ¶ 54 ("the potential health and environmental risk of PFAS in cosmetics"); *Id.* ¶ 77 ("potential for harm of PFAS").

Additionally, many of Plaintiffs' allegations that all PFAS are harmful are specifically contradicted by the cited sources in the FAC. For example, Plaintiffs assert that conservatively 70% of PFAS are dermally absorbed through human skin. *Id.* ¶ 69. As previously detailed, the cited source only reviewed dermal absorption of a single find of PFAS. *Id.*; RJN, Ex. 1. This study also determined that the levels of specific PFAS found were unlikely to pose a health risk to consumers. *Id.* The FAC is replete with examples of the Plaintiffs making sweeping allegations that are specifically contradicted by the cited sources. *See* FAC ¶¶ 48 n.21, 70 n.32; RJN Ex. 11 (Asserting that a National Toxicology Program study found that PFAS have adverse effects on human organ systems, when the cited webpage contradicts this by explaining the study was conducted on rats and tested only for a few specific PFAS); FAC ¶ 47 n.20; RJN, Ex. 8 (alleging that all PFAS are "potentially harmful," when the cited EPA source says "[s]cientific studies have shown that exposure to *some* PFAS in the environment may be linked to harmful health effects in

humans and animals." (emphasis added); FAC ¶ 77 n.37; RJN, Ex. 12 (stating there is a scientific consensus for persistence and potential harm of PFAS, when the cited Madrid Statement says "*some* long-chain PFASs have been found to cause liver toxicity . . .", "associations between *specific* long-chain PFASs and adverse outcomes", and "*some* shorter-chain fluorinated alternatives seem to be less bioaccumulative") (emphasis added).

In fact, the Plaintiffs do not, because they cannot, cite a single scientific piece of literature showing that PFAS, as a group, are harmful. The EPA and FDA statements on PFAS demonstrate this. Indeed, the FDA has gone so far as to pre-approve some PFAS for use in food contact materials after determining the substances "are safe for their intended use" by conducting "rigorous scientific review before they are authorized for the market." RJN, Ex. 6; *see also* Exs. 3, 7, 8, 9. Courts around the country that have considered this issue have readily pointed out that not all PFAS are harmful. *See* Order at 4, *GMO Free USA*, Ex. 9 (taking judicial notice that different PFAS have different potential health outcomes and that some compounds, such as PTFE, have not been found to be toxic or unsafe).

One of Rule 9(b)'s functions is to ensure a defendant can defend against a charge and not be forced to simply generally deny that it has done anything wrong. At a minimum, Shiseido must be informed as to what specific chemical(s) are at issue. Without such specificity, Shiseido is deprived of a meaningful opportunity to prove that the substance(s) at issue are not harmful and would not impact reasonable consumers' purchasing decisions.

This conclusion is confirmed by *Andrews v. Procter & Gamble Co.*, where the court held that generic PFAS allegations do not meet Rule 9(b)'s heighted pleading standard. No. EDCV 19-00075 AG (SHKx), 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019). There, a plaintiff alleged the presence of PFAS in Oral-B dental floss based on a third party study and that PFAS

are linked to certain adverse health conditions.  *Id.* at *1–3.  The court granted the defendant's motion to dismiss because the study at issue was premised only on fluorine testing, and plaintiff lacked any testing for particular PFAS.  *Id.* at *3.  The situation here is the same.  Plaintiffs' claims rely only an organic fluorine test, which they concede is not taken from the Products they bought.  Accordingly, Plaintiffs failure to identify specific chemicals is fatal to their case.

IV.    **Plaintiff's Claims Are Preempted by Federal law.**

The FAC's allegations concerning violations of the FDCA and state law violations premised on the FDCA are preempted.  *See* FAC ¶¶ 93-151.   Of the five Products at issue, the three non-SPF products are regulated as cosmetics and the two SPF products are regulated as nonprescription drugs and cosmetics by the FDCA.   FDCA sections 379s(a) and 379r(a)[5] expressly preempt states from imposing any requirement related to the regulation of cosmetics and nonprescription drugs "that is different from or in addition to, or that is otherwise not identical with, a requirement under" the FDCA.  Moreover, under section 337(a), "[a]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  "Although [section] 337(a) does not expressly preempt state law, it has long been understood to have an implied preemptive effect."  *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 385 (D. Conn. 2018).  Taken together, these provisions "have a broad preemptive effect on state law claims."  *Id.*

Although the FAC lists dozens of paragraphs concerning alleged violations of the FDCA, Plaintiffs do not tie these purported violations into any of their causes of action, leaving Defendant and the Court to guess how these allegations interact with the state laws at issue.  However, it is apparent that Plaintiffs take one position that is patently preempted by the FDCA express

---

[5] All citations in the section not otherwise specified are under Title 21 of the United States Code.

preemption provisions.   The FAC alleges that Shiseido was required to list "PFAS" as an ingredient on the Products' labels.  *See* FAC ¶¶ 120.  This is despite the FAC conceding PFAS are a group of thousands of specific chemicals and not identify any particular chemical at issue.  The FDA mandates certain ingredient nomenclature, including identifying ingredients in accordance with the International Cosmetic Ingredient Dictionary (21 C.F.R. § 701.3) and designated names for drugs (21 C.F.R. § 201.66(b)(5))[6].  In cosmetics, "ingredient means any single chemical entity or mixture used as a component in the manufacture of a cosmetic product."  21 C.F.R. § 700.3(e).  "PFAS" is of course not a recognized ingredient under FDA nomenclature, because it is in fact a chemical group made of thousands of substances.  For the Products' labels to list a PFAS chemical as an ingredient, federal law requires identification of a *specific* chemical in the class, such as PTFE, but the FAC does not allege that any particular chemical is in the Products.  As such, Plaintiffs' demand that Shiseido include "PFAS" the group as an ingredient in the Products is different from and not identical with the FDA's requirements of disclosing ingredients in cosmetics and nonprescription drugs.  *See Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 36 (2d Cir. 2020).  Moreover, because the FAC alleges that the presence of PFAS may not even have been known to Shiseido (e.g. the PFAS was a result of degradation), they do not qualify as ingredients under the FDCA for this additional reason.  21 C.F.R. § 701.3(l) (exempting from disclosure ingredients that are only "incidental"); *Henning v. Luxury Brand Partners, LLC*, No. 22-CV-07011-TLT, 2023

---

[6] This regulations states: "Established name of a drug or ingredient thereof means the applicable official name designated under section 508 of the act (21 U.S.C. 358), or, if there is no designated official name and the drug or ingredient is recognized in an official compendium, the official title of the drug or ingredient in such compendium, or, if there is no designated official name and the drug or ingredient is not recognized in an official compendium, the common or usual name of the drug or ingredient."  The FAC does not allege that PFAS qualify as an ingredient under any of these criteria.

WL 3555998, at *5 (N.D. Cal. May 11, 2023) (holding that because benzene is an impurity, it does not qualify as an ingredient under the FDCA for cosmetics).

As to the allegations concerning good manufacturing practices ("GMPs") (FAC ¶¶ 128-136), Plaintiffs are simply trying to enforce the FDCA, something that they are impliedly preempted from doing.[7] Plaintiffs also allege that under the GMPs, "Defendants had and has a duty to ensure that its Products did not and do not contain PFAS." *Id.* ¶ 136. Plaintiffs cite to no law to support this position because no such law exists. In fact, the FDA has a full webpage discussing the use of PFAS, either intentionally or as a trace manufacturing biproduct, in products and states nothing about the FDCA prohibiting such uses. RJN, Ex. 3. Thus, these allegations are not "identical with", and in fact specifically contradict, FDA's position on PFAS.

Finally, as to the two drug Products, the FDCA express preemption provision contains a savings clause that saves from preemption only those state warning laws that fall within it. Section 379r(d)(2); *Ctr. for Env't Health v. Perrigo Co.*, 89 Cal. App. 5th 1, 19 (2023), *review denied* (June 21, 2023). California's Proposition 65, a law not at issue here, is the only state law to fall within that savings clause. *Id.* Thus, warnings sought here cannot be compelled on the drugs Products.

## V.   The Ancillary Claims All Fail for Independent Reasons.

Plaintiffs' common-law claims fail for the reasons discussed above, and for the independent reasons discussed below. Plaintiffs' breach of implied warranty claims fails because the Products are fit for their ordinary use and their labels are not alleged to make PFAS free claims. Under the New York Uniform Commercial Code, "[t]o be merchantable, goods 'must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the

---

[7] It is also notable that Plaintiffs litter their FDCA section with statements that the Products are adulterated, that is "contains any poisonous or deleterious substance which may render it injurious", despite the Plaintiffs admitting in the FAC t*hey have not been physically injured and are premising their claim only on alleged economic injury*. *See, e.g.*, FAC ¶ 141.

promises or affirmations of fact made on the label or container if any.'" *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (quoting N.Y. U.C.C. § 2-314(2)). Furthermore, "the warranty does not mean that the product will fulfill a buyer's every expectation but simply provides for a minimum level of quality." *Gordon*, 2022 WL 836773, at *14.  Plaintiffs never plausibly allege the Products are unfit for ordinary use.[8]

Plaintiffs' breach of express warranty claim identifies no specific warranty made that was relied upon by Plaintiffs.  An express warranty occurs when an "affirmation of fact or promise to [a] buyer which relates to . . . goods and becomes part of the basis of the bargain . . ." N.Y. U.C.C. § 2–313(1)(a).  For a breach of express warranty claim to prevail under New York law, a plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan 19, 2021) (internal quotations & citation omitted).  To satisfy this framework, a plaintiff must point to a particular statement on which she relied. *Brown v. Coty, Inc.*, 2023 WL 2691581, at *4.  The FAC lacks any specific statement that is an alleged express warranty that the Products were PFAS free.[9]

---

[8] The breach of implied warranty claim must also fail where Plaintiffs do not allege privity with Shiseido. Under New York law, "no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." *Turk v. Rubbermaid Corp.*, No. 21-CV-270 (KMK), 2022 WL 836894, at *10 (S.D.N.Y. Mar. 21, 2022) (citing *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-CV-1228, 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020)).  Plaintiff Zeller alleges that she purchased a product most recently from Amazon (FAC ¶ 226) and plaintiff Ferguson alleges that she purchased a product most recently from Ulta (FAC ¶ 235).  Therefore, their breach of implied warranty claims must fail for this additional reason.

[9] The breach of express warranty claim also fails as to plaintiffs Woods, Zeller, Ferguson, and Bailey because they did not allege they provided adequate notice of the breach prior to filing the Complaint.  New York law requires that "the buyer must[,] within a reasonable time after [s]he

The negligent misrepresentation claim also fails.  "New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Brown v. Kerry Inc.*, No. 2-CV- 9730 (PGG) (JLC), 2021 WL 5446007, at *7 (S.D.N.Y. Nov. 22, 2021) (citation omitted).  "[A] closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the existence of  . . . a special relationship . . ." *Id.* (internal quotations omitted); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (explaining that "courts have consistently held that advertisements alone are not sufficient . . . ." to allege the existence of a special relationship (collecting cases)) (citation omitted).  Plaintiffs do not and cannot plead any special relationship between Shiseido and Plaintiffs that justifies a negligent misrepresentation claim.  Plaintiffs, either at a physical location or online store, purchased the Products.[10]  A special relationship requires more than this commonplace transaction.  *See Brown*, 2021 WL 5446007, at *7.

## CONCLUSION

Shiseido respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

---

discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy . . . ." N.Y. U.C.C. § 2–607(3)(a).  "[T]o adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time." *Gordon*, 2022 WL 836773, at *14 (citation omitted).  Plaintiffs state that only Onaka sent a written notice, conceding the others failed to do so.  FAC ¶ 215.

[10] FAC ¶¶ 206 ("She purchased . . . at bare+Beauty"), 110 ("She purchased . . . from the bareMinerals website"), 226 ("She purchased . . . from Amazon"), 235 ("She purchased . . . from the Ulta website") & 244 ("She purchased . . . from the bareMineals website").

Dated: June 26, 2023
New York, New York

Respectfully submitted,

/s/ Lori B. Leskin
Lori B. Leskin
E. Dean Harris Porter
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, New York 10019
Phone: (212) 836-8541
lori.leskin@arnoldporter.com
dean.porter@arnoldporter.com

Willis M. Wagner (admitted *pro hac vice*)
**Arnold & Porter Kaye Scholer LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111
Phone: (916) 534-1044
will.wagner@arnoldporter.com

***Attorneys for Defendant Shiseido Americas
Corporation***