UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DAIAN ONAKA, TORSHIA WOODS, SHELI ZELLER, MARGO FERGUSON, and EVA BAILEY, individually and on behalf of all others similarly situated,

                *Plaintiffs,*

-against-

SHISEIDO AMERICAS CORPORATION,

                *Defendants.*

------------------------------------------------------------X

1:21 Civ. 10665 (PAC)

**OPINION & ORDER**

Plaintiffs Daian Onaka, Torshia Woods, Sheli Zeller, Margo Ferguson, and Eva Bailey (collectively, "Plaintiffs") bring claims on behalf of themselves and a putative nationwide class against Defendant Shiseido Americas Corporation ("Defendant"), alleging that Defendant misrepresented its beauty products, (the "Products") as "clean" and "natural" when they actually contain per- and polyfluoroalkyl substances ("PFAS").[1] Defendant moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Defendant's 12(b)(1) motion is **GRANTED**.

---

[1] Plaintiffs bring causes of action for: (1) breach of implied warranty; (2) breach of express warranty; (3) negligent misrepresentation; (4) fraud; and violations of the (5) California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; (6) the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (7) the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (8) the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01, *et seq.*; (9) the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, and (10) the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*

1

## BACKGROUND

On March 28, 2023, the Court granted Defendant's Rule 12(b)(1) motion to dismiss Plaintiffs' complaint for lack of Article III standing. *Onaka v. Shiseido Americas Corp.*, No. 21 Civ. 10665, 2023 WL 2663877, at *6 (S.D.N.Y. Mar. 28, 2023). The Court assumes familiarity with its prior decision and recites only the facts necessary to determine the instant motion. The following facts are taken from the First Amended Complaint ("FAC"), ECF No. 40, and are assumed to be true for the purposes of deciding the motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Defendant is "one of the largest cosmetic companies in the world, with a portfolio including dozens of high-end brands," including the brand "bareMinerals." FAC ¶ 3. bareMinerals "differentiates itself in the highly competitive beauty market by uniformly advertising its products as" exceptionally pure and natural. *Id.* ¶ 2. However, "contrary to the bareMinerals name, business model and purpose," Plaintiffs allege that it sells products which contain PFAS chemicals "that are known to be potentially harmful to humans and the environment." *Id.* ¶ 87. Defendant's purported practice of advertising potentially toxic products as exceptionally clean serves as the crux of Plaintiffs' complaint.

PFAS are a broad and diverse group of thousands of different chemicals. *Id.* ¶ 20. All PFAS, sometimes called "forever chemicals," contain very strong carbon-fluorine bonds which make them highly persistent in the environment and in human bodies. *Id.* ¶ 48. PFAS contain hydrophobic and film forming properties and are sometimes added to cosmetics to increase their durability and water resistance. *Id.* ¶¶ 51, 55. However, various studies indicate that PFAS in cosmetics are associated with adverse health effects, such as "increased cholesterol, liver

inflammation, increased blood pressure in pregnancy, decreased birth rate of children, decreased vaccine response in children, and increased risk of kidney or testicular cancer." *Id.* ¶¶ 47–66.

Plaintiffs are consumers who purchased bareMinerals makeup with the expectation that it would be as "clean" as advertised, i.e., that it would not contain PFAS. *See, e.g., id.* ¶¶ 212, 223, 232, 241, 250. However, after purchasing the Products, Plaintiffs retained a third-party lab to test Products within the same line as those that Plaintiffs purchased, and these tests revealed that the Products contained organic fluorine, which is an indicator of PFAS. *Id.* ¶¶ 17–20. These results comport with recent research which shows that various raw ingredients used in the Products are sometimes treated with PFAS. *Id.* ¶ 25 (citing Heather Whitehead et al., *Fluorinated Compounds in North American Cosmetics*, Environ. Sci. Technol. Lett. (June 15, 2021) https://pubs.acs.org/doi/10.1021/acs.estlett.1c00240). Based on these findings, Plaintiffs maintain that they suffered an economic injury by overpaying for misbranded products.

## DISCUSSION

### I.   Legal Standard Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden. The task of the district court is to determine whether the Pleading 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (brackets omitted)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the court

"must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 56–57 (cleaned up). "However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action." *Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 10900, 2022 WL 955945, at *3 (S.D.N.Y. Mar. 30, 2022). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations and quotations omitted).

## II.   <u>Article III Standing</u>

The Court begins and ends its analysis with standing. To satisfy the "'irreducible constitutional minimum' of standing," a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, Plaintiffs allege a price-premium theory of injury. In other words, they claim they were injured because they overpaid for Defendant's makeup, which was advertised as "clean" but which actually contained undisclosed, potentially toxic, PFAS. *See, e.g.*, FAC ¶¶ 212–13, 223–24, 232–33, 241–42, 250–51. Each avers that had she known of the PFAS, she would have avoided the purchase or paid significantly less. *See id.*

The Court's prior Order made clear that to establish standing under a price-premium theory of injury, Plaintiffs must "allege facts making it at least plausible that one of them purchased a Product that was misbranded, i.e., that contained PFAS." *Onaka*, 2023 WL 2663877 at *4. The

4

Court indicated several ways for Plaintiffs to do this. The most direct route would be for Plaintiffs to test their own purchases for PFAS. More indirectly, Plaintiffs could test Products within the same line as their purchases. But should Plaintiffs pursue this indirect method, they would have to "meaningfully link[]" the results of their independent testing "to Plaintiffs' actual Purchased Products." *Hicks v. L'Oreal U.S.A., Inc.*, No. 22 Civ. 1989, 2023 WL 6386847, at *9 (S.D.N.Y. Sept. 30, 2023). To establish this link, they would have to, at a minimum, establish that the tests occurred "reasonably near in time" to their purchases. *See Clinger v. Edgewell Personal Care Brands, LLC*, No. 21 Civ. 1040, 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023). Moreover, they would also have to allege "that the presence of PFAS in the Products is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once." *Onaka*, 2023 WL 2663877 at *5. This would require alleging facts "from which the Court could extrapolate that their isolated testing should apply broadly to Defendant's Products" and that "Plaintiffs purchased the Products with any regular frequency" such that the Court could "infer a plausible likelihood of a past injury." *Id.*

Here, Plaintiffs have alleged standing indirectly, based on independent testing of Products within the same line as their purchases. However, as with their prior complaint, they have failed to allege plausibly the Products they purchased contained PFAS and, accordingly, lack standing to bring this suit.

First, the FAC fails to establish that Plaintiffs tested the Products near in time to Plaintiffs' purchases. Plaintiffs allege that in September and October of 2021, they tested two samples of five distinct Products[2] for the presence of organic fluorine. *Id.* ¶¶ 17–19. Accordingly, they must

---

[2] Plaintiffs tested BAREPRO® Performance Wear Liquid Foundation SPF 20, BAREPRO® 16-Hr Full Coverage Concealer, BAREPRO® Longwear Lipstick, Original Liquid Mineral Foundation, and GEN NUDE® Matte Liquid Lipstick. FAC ¶¶ 18–19.

allege that a Plaintiff purchased one of these Products reasonably near in time to September or October of 2021. But a careful review of the pleadings shows that these allegations are still missing. Plaintiff Daian Onaka's allegations provide a useful example.[3] Onaka alleges the following:

> 206. Plaintiff Daian Onaka purchased the PFAS Makeup, including BAREPRO® Performance Wear Liquid Foundation SPF 20, BAREPRO® 16-Hr Full Coverage Concealer, Original Liquid Mineral Foundation, GEN NUDE® Matte Liquid Lipstick. She purchased the PFAS Makeup most recently in September 2021, at bare+Beauty, a bareMinerals outlet store located in Livermore, California.
>
> 207. Each PFAS Makeup product that Plaintiff purchased was tested in either September or October 2021, as described above, in close proximate time to when Plaintiffs conducted testing on the PFAS Makeup Products.

FAC ¶¶ 206–07. Again, the critical question is when Onaka purchased one of the tested Products. But the allegations only state that Onaka purchased "the PFAS Makeup most recently in September 2021." *Id.* ¶ 206. Plaintiffs define "PFAS Makeup" as "bareMinerals products, which are marketed as clean and natural beauty products for normal, everyday use, but which contain harmful per- and polyfluoroalkyl substances" and explicitly disclaim that the term is "not limited to" the five Products actually tested. *Id.* ¶ 1. Thus, the critical piece of information—when exactly Onaka purchased each particular piece of makeup Plaintiffs tested—continues to be absent from the FAC.

Plaintiffs have likewise failed to allege facts "from which the Court could extrapolate that their isolated testing should apply broadly to Defendant's Products." *Onaka*, 2023 WL 2663877 at *5. As with their original Complaint, Plaintiffs put forth only a single study from the University

---

[3] Plaintiffs repeat the same structure for each Individual Plaintiff. *See* FAC ¶¶ 217–18 (Woods's allegations); *id.* ¶¶ 226–27 (Zeller's allegations); *id.* ¶¶ 235–36 (Ferguson's allegations); *id.* ¶¶ 244–45 (Bailey's allegations).

of Notre Dame (the "Study") which found fluorine in Defendant's products. FAC ¶ 22 (citing Whitehead et al., *supra*). However, that Study does not specify which "line of Products were tested . . . and only tested cosmetics purchased from 2016 through 2020," well before any of Plaintiffs' alleged purchases. *Onaka*, 2023 WL 2663877 at *5. Other courts to consider this very study in relation to similar claims have found it to be unhelpful in establishing standing. *Hicks*, 2023 WL 6386847 at *8 (noting, as here, that "the Amended Complaint fails to explain how the twenty-nine cosmetic products that were found to contain long-chain PFAS were chosen . . . whether the study detected the same types of PFAS that were detected in the Tested Products, or how many of the 231 total products tested were found to have high fluorine levels, to list just a few uncertainties in the findings as alleged").

Although the Study draws no actionable conclusions regarding Defendant's specific Products, Plaintiffs argue that the Study's findings regarding raw ingredients nudges their claims "across the line from conceivable to plausible." Pls.' Opp. 7, ECF No. 51 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, Plaintiffs argue that the Study "revealed a widespread practice within the cosmetic industry of treating raw ingredients with PFAS to increase their hydrophobic properties and improve durability and wear." *Id.* They conclude that because Defendant's Products contain these ingredients, they likely also contain PFAS. *Id.* However, Plaintiffs overstate the Study's findings, which did not "reveal[] a widespread practice" of treating ingredients with PFAS, but simply said "both mica and talc can be treated with PAPs to provide hydrophobic properties that improve the durability and wear of applied cosmetics. The same is true of other ingredients including silica, Nylon-12, and color additives." Study at 542 (footnotes omitted). This does nothing to allege the prevalence of such practices in the cosmetics industry generally, let alone that Defendants purchased or used PFAS-laden ingredients. It is entirely

7

speculative to infer that because some unidentified suppliers might treat certain raw ingredients with PFAS, all cosmetics with those ingredients contain PFAS. Such allegations remain squarely on the conceivable end of the *Twombly* pleading spectrum.

Finally, as with their prior Complaint, Plaintiffs have made no allegations regarding the frequency of their purchases. The allegations regarding Plaintiffs' purchases are that each "purchased the PFAS Makeup," "previously purchased bareMinerals products," and "most recently" purchased them in 2021. FAC ¶¶ 206–09, 217–20, 226–29, 235–38, 244–47. As the Court previously noted, these allegations are "a far cry from the repeated purchases within a specified period alleged by other plaintiffs that have allowed courts to infer a plausible likelihood of a past injury. While it may have been plausible that the Plaintiffs were injured had they shown either timely third-party findings related to PFAS in the same line of Products as those purchased by Plaintiffs or that the Plaintiffs purchased the Products with any regular frequency, the absence of both renders their claims too speculative to confer standing." *Onaka*, 2023 WL 2663877 at \*5. As the operative allegations have not meaningfully changed, the Court reaffirms its prior holding.

The Court concludes that, based on the allegations in the FAC, Plaintiffs have not adequately pleaded that the Products they purchased contained PFAS. Thus, the Court finds that none of the Plaintiffs has standing to maintain this suit and, accordingly, dismisses the FAC without prejudice. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice."). Because the Court finds that Plaintiffs fail adequately to allege Article III standing, it does not reach the remainder of Defendant's arguments, including its request for judicial notice, the applicability of Rule 9(b), and failure to state a claim under Rule

12(b)(6). *See, e.g., Carlone v. Lamont*, No. 21-871, 2021 WL 5049455, at *4 n.4 (2d Cir. Nov. 1, 2021) (summary order).

## CONCLUSION

Defendant's motion to dismiss is **GRANTED** without prejudice. Defendant's request for oral argument is denied. Fed. R. Civ. P. 78(b). Plaintiffs have 21 days to file a Second Amended Complaint, as a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court emphasizes, however, that Plaintiffs should file a Second Amended Complaint only if they believe that they can plead facts that would adequately cure the standing-related issues identified above. The Clerk of the Court is respectfully directed to close the motion at ECF No. 48.

Dated: New York, New York
　　　　March 19, 2024

SO ORDERED

*Loretta A. Preska*

HONORABLE LORETTA A. PRESKA

United States District Judge